Howard T. Hogan, J.
Petitioner seeks a review, under article 78 of the Civil Practice Act, of the determination of the respondent Zoning Board of Appeals of the Village of Hempstead, which denied it a special exception permit to erect a gasoline station on its property located at the northeast corner of Fulton Avenue and Surrey Lane. Said property is an unimproved parcel 135 feet by 110 feet, lying in a Business “ B ” District in which a gasoline filling station is a permitted use when authorized by the Board of Appeals in accordance with the standards established in the zoning ordinance.
This is not an application for a use variance under section 179-b of the Village Law but is an application for a special exception permit as provided for in the zoning ordinance. There is a substantial difference between the two. The granting of a special exception is apparently not too generally understood. It does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes under stated conditions. In short, a special exception is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist.
A special exception, unlike a variance, does not involve the varying of the ordinance but rather compliance with it. The power to vary is a legislative grant, found in the Village Law. It permits a Board of Appeals to allow a property owner to make use of his property in some way which is in conflict with the literal provisions of the ordinance. The power to grant a use variance is to be sparingly exercised and only in rare instances and under exceptional circumstances personal in their nature. A showing of unnecessary and unique hardship is prerequisite to a use variance (Matter of Otto v. Steinhilber, 282 N. Y. 71) but such proof is not necessary for a special exception permit. The issuance of a special exception permit, on the other hand, is a duty imposed upon the Board of Appeals by the terms of the zoning ordinance, which duty is to be performed in the manner therein provided.
The facts disclosed by this record make it clear that the exclusion of gasoline stations from business districts is not indispensable to the zoning plan of a village and there is no legislative determination by the village that such proposed uses in business districts would be inconsistent with public health, safety, morals or general welfare. The zoning ordinance itself plainly implies the contrary. The grant of permission for such use, although subject to approval by the Zoning Board of Appeals, shows that the legislative body of the village found that the construction *12 and maintenance of such uses in business districts is in harmony with the public interest and within the general scope and plan of the zoning ordinance. Otherwise, such use would have been prohibited by the ordinance in such districts and permitted only by way of variance upon proof of unnecessary hardship in each case.
It therefore became the duty of the Zoning Board of Appeals to determine whether, upon the proof before it, the proposed use met all of the standards enumerated in the ordinance. If it failed to meet one or more, the board was bound to deny a special exception. Conversely, if all the standards were met, it was under a duty to grant the request, since a gasoline station is, by the terms of the ordinance, a conditionally permitted use, rather than one requiring a variance (Zoning Bulletin No. 74, Regional Plan Assn., Dec., 1954).
The decision of the board recited petitioner’s failure to meet six of the conditions or standards imposed by the ordinance, to wit: (1) that it would tend to depreciate the value of the surrounding property; (2) it would tend to alter the essential character of the neighborho'od; (3) it would create a traffic hazard by obstructing the vision of motorists approaching the intersection ; (4) it would create or augment undue traffic and parking congestion in the location; (5) it would endanger the safety of pedestrians, especially children, in view of the fact that there is already another gasoline station adjacent to the subject property, and (6) it would cause excessive light, noise, vibration and noxious fumes.
Upon this review it is the function of the court to examine the record and determine whether it contains evidence sufficient to warrant such findings.
The subject property fronts upon Fulton Avenue, a very busy arterial thoroughfare, running, under various names, the entire east-west length of the county. For virtually its entire length within the Village of Hempstead, it is zoned on both sides for business uses. On the northwest corner of Fulton Avenue and Fairview Blvd, abutting petitioner’s property on the east, is an existing gasoline service station. Diagonally opposite on the southeast corner of Fulton Avenue and Cameron Avenue is still another gasoline service station. Directly opposite, on the south side of Fulton Avenue, is a diner with its own parking lot. The rest of Fulton Avenue in both directions in the immediate neighborhood, is devoted to retail stores, restaurants, an automobile sales agency, a hotel, parking lots and a union local headquarters. Surrey Lane, on which the subject property has a second frontage is a dead-end street, roughly 1,200 feet in *13 length, from which lead several dead-end courts, all of which, from a distance 100 feet north of Fulton Avenue, are developed with one-family residences. The occupants of these are virtually unanimous in opposing the proposed use.
Will a gasoline service station change the essential character of this neighborhood? The property is already zoned for business uses and could be devoted at any time and without the consent of the Board of Appeals, to any of the following uses permitted by the ordinance: theatre or moving picture house, bakery, tailor shop, garage accessory to a business use, printing office, shoe repair, hat cleaning, laundry and dry cleaning with a receiving and delivery agency. This zoning has thus fixed the character of the neighborhood. When one buys a home adjacent to vacant land with notice that it is already zoned for business or commercial uses, he cannot be heard to complain that its future development for such use will change the essential nature of the community. There is nothing whatever on this record which would indicate that the proposed use would depreciate values to a greater extent than would a per se permitted dry cleaning establishment or a laundry. It is rather the fact that a property can at any time be put to commercial uses which should establish values in the neighborhood.
The structure proposed to be placed on the property would have a setback of 65 feet from Fulton Avenue and 50 feet from Surrey Lane. Even considering the existence of several pumps, it is inconceivable that such use would, to quote the decision of the board, ‘ ‘ create a traffic hazard by obstructing the vision of motorists approaching the intersection.” This ground for the denial of the petition appears specious in the light of the fact that the ordinance now permits the erection of a store or business building with front yards on both streets of no more than five feet (§ 1602). It could be argued with merit that the proposed use actually would insure unobstructed vision to motorists, rather than create a hazardous condition.
On a thoroughfare such as Fulton Avenue, the presence of one more gasoline station cannot unduly “ augment traffic congestion ” to an appreciable degree. There is no proof whatsoever in the record that this use will attract additional motorists who would not otherwise use Fulton Avenue or Surrey Lane. Nor is there any proof that the presence of a gasoline service station will create or aggravate the parking problem. No reference is made to any past experience upon which such a finding could be based. It is fundamental that the board must state the facts upon which it bases its decision and cannot rest upon a bare unsupported conclusion.
*14 One objectant stated as his opinion that: “ Children going to the store for their parents or even parents, as far as that goes, going to the store, must pass the property of one gas station. If we have one solid block of gas station exits or entrances to pass to get to the local stores, I believe that to be a threat to life and limb.”
Unquestionably the presence of a gasoline station involves a measure of inconvenience and even hazard to pedestrians, since automobiles must cross the sidewalk to reach its service area. However, the fact remains that this particular parcel of land, without the issuance of any special exception by this board could be used, under the ordinance, for a restaurant with off-street parking, garage accessory to a business use, or a ‘ ‘ Laundry and Dry Cleaning Receiving and Delivery Agency ’ ’, any of which uses could likewise involve vehicles crossing the sidewalk.
This presents the question — “ May a zoning appeals board deny a permit for a conditional use in a situation where an unconditionally permitted use of the same property would involve precisely the same, or even greater, inconveniences to the neighborhood? ” Considered in the light of the petitioner’s undisputed statement in the record that ‘ ‘ The owner, since his ownership for the past three years has made every effort to get a business of some kind so that his land may be made productive. This is the first opportunity presented to him ”, and the further fact that there are presently vacant stores and unimproved parcels in the neighborhood,' such denial would seem to be arbitrary and unreasonable.
Finally, the board concluded that the proposed use “ would also cause excessive light, noise, vibration, noxious fumes.” Aside from a statement by the petitioner that ‘ ‘ The application of known facts demonstrates that the modern filling station does not emit noxious fumes or produce noise which interferes with the use of surrounding properties and does not create any hazard to health, safety and general welfare of the residents of the village, including those in the nearby area.” And a statement by an objectant that “We are not worried particularly about noxious fumes ”, the record is barren of any proof whatsoever upon this particular subject.
It is well settled that an administrative board’s decision must be supported by evidence in the record, and that facts personally known to the members of the board, if the basis for its decision, must be disclosed (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 454).
*15 The court is reluctant to interfere with the determination of the hoard; nevertheless, as in this instance, when the record fails to reveal sufficient facts upon which such determination would be reasonably based, it must find its refusal to grant a special exception permit to this petitioner to have been arbitrary, capricious and unwarranted. Accordingly, the decision of the respondent board is vacated and set aside and the matter is remitted to it for the purpose of the issuance of the use permit upon such proper administrative conditions as the board deems reasonable and necessary.