Bernard S. Meyer, J.
This is an article 78 (Civ. Prac. Act) proceeding seeking a direction requiring the Village Board of Massapequa Park to issue a permit for a gasoline service station. The prayer of the petition is granted, and the matter is remanded to the board with directions.
Prior to February 11, 1952 the village Zoning Ordinance made such service stations a special permit use and provided for approval by the Board of Appeals. In February, 1952 the Zoning Ordinance was amended to prohibit all such service stations and it was not until November 10, 1958 when article XXVII was added to the Zoning Ordinance, that gasoline service stations were again permitted. The operative sections of article XXVII read as follows:
“ Section 1. No gasoline and/or service station shall be erected, altered, or extended except in Business “ G ” or “ GG ” Districts provided the property is abutted on the rear and side by property zoned Business “ G ” or “ GG ” and said plot shall have at least 150 ft. frontage and 100 ft. in depth.
“ Section 2. No lot or plot shall be used for the sale or storage of gasoline or oil until the owner has made application for and received a special permit therefor from the Board of Trustees of the Incorporated Village of Massapequa Park after a public hearing held for that purpose.
“Section 3. In the interpretation and application, the provisions of this ordinance shall be held to be minimum requirements adopted for the promotion of public health, morals, safety or general welfare of this Village. Wherever the requirements of this ordinance are at variance with the requirements of any other adopted rules, regulations, codes or ordinances, the most restrictive or that imposing the higher standard shall govern. ’ ’
Petitioner herein is the owner of a 30-acre shopping center which, in August, 1956, was changed from Business “G” to a Business “GG” district. Petitioner’s premises are the only premises within the village limits designated as a Business ‘ ‘ GG ’ ’ district. On March 2, 1959 petitioner made application for a special permit under article XXVII for a gasoline station to be erected at the northeast corner of the shopping center premises on a portion thereof having a frontage of 150 feet on Merrick Road and a depth of 125 feet. The application requested waiver of the full basement requirement because impractical in view of the ground-water elevation in the area. The zoning maps and photographs attached to the papers *897 show that the shopping center is hounded on the north by Merrick Road, on the east by Whitewood Drive (also called River Drive), on the south by Nassau Street and on the west by Harbor Lane. The property to the east of Whitewood Drive and to the west of Harbor Lane is zoned residential, and is partially, though not completély, developed. The property to the south of Nassau Street is zoned for and occupied by residences, except that opposite approximately 60% of the southern boundary of the shopping center (between Whitewood Drive on the east and Birch Lane on the west) there is an elementary school. On the north side of Merrick Road, opposite the shopping center premises and for approximately one half the frontage of the shopping center on Merrick Road, running from Harbor Lane east past Cartwright Boulevard, are business buildings. Opposite the balance of the Merrick Road frontage of the shopping center is the Massapequa High School. The main entrance to the high school is at the western end of the high school tract, approximately opposite the middle of the shopping center premises. That portion of the high school tract which directly faces the proposed site of the gasoline station is vacant except for a few trees.
On May 25, 1959 after notice given in accordance with the ordinance, a public hearing was held, and on June 11, 1959 the Village Board denied the application. The resolution of denial recited that (1) erection of the gasoline station would create a traffic hazard by increasing the flow of traffic on Merrick Road, (2) the proposed site of the station is directly opposite a high school, (3) there are numerous gasoline stations in the vicinity of the proposed site, (4) the gasoline station was not set forth on the developer’s original plan at the time it was submitted in 1952, and (5) the erection of the station would not be for the general welfare and safety of the inhabitants of the village and would depreciate the value of the neighboring residential property.
The answer and return of the respondent Village Board denies certain factual allegations set forth in paragraph 13 of the petition and all of paragraph 14 of the petition, and sets up as affirmative defenses, first, that the action of the board was taken by virtue of its legislative power and in the proper exercise of discretion, and second, that the petition is legally insufficient since it seeks to obtain judicial review of a legislative act. The objection in point of law made by the second defense must be dismissed. Matter of Rothstein v. County Operating Corp. (6 N Y 2d 728, 729) has now made it clear that “ in making determinations upon applications for special excep *898 tions under the Zoning Ordinance, the Town Board exercises judgment or discretion of a character which is reviewable as to reasonableness in a proceeding under article 78 of the Civil Practice Act ’
Respondent’s answer is insufficient to raise any question except the legal objection since it does not state the pertinent and material facts showing the grounds on which the board’s action was taken (Civ, Prac. Act, § 1291; Matter of Lemir Realty Corp. v. Larkin, 8 A D 2d 970; Matter of Pratt v. Larkin, 7 A D 2d 869). Under the circumstances, petitioner was at liberty, under the provisions of section 1297 of the Civil Practice Act to apply for a final order in its favor on the basis of the petition and accompanying papers. Since, however, petitioner served a reply and a reply affidavit, and since the facts which should property have been alleged in the answer are set forth in the affidavit and other documents annexed to the respondent’s answer, the court will consider the application on the merits, on the basis of the papers submitted (cf. Matter of Pratt v. Larkin, supra).
The last-cited case held that subdivision 7 of section 267 of the Town Law governs review of a town board’s action in granting or denying a special exception. It follows from that holding that the corresponding language of section 179-b of the Village Law governs review of the Village Board’s similar action in the instant case. In consequence, the limitation set forth in section 1296 of the Civil Practice Act is not applicable and this court must determine all of the questions presented for determination under that section, whether related to law or to fact. However, neither the Rothstein case nor Matter of Lemir Realty Corp. v. Larkin (supra) spells out “the precise nature of the function exercised ” by the board in passing on applications for special exception nor does either clearly define the limits of the review “as to reasonableness ” allowed.
The adoption and amendment of a zoning ordinance by the Village Board are legislative functions. The statutory authority of a village board with respect to zoning is contained in subdivision 30 of section 89 and sections 175 and 177 of the Village Law. Uniformity for each class or kind of building within a district is required (Village Law, § 89, subd. 30, § 178) and in the enactment or amendment of the Zoning Ordinance, specified procedures, including notice and publication, must be followed (Village Law, §§^ 178, 179). Clearly, a Zoning Ordinance may entirety prohibit gasoline stations in a particular district (Matter of Suburban Tire & Battery Co. v. Village of Mamaroneck, 304 N. Y. 971, affg. 279 App. Div. 1084, affg. *899 104 N. Y. S. 2d 850), and an amendment to permit a station in such a district would be a legislative act. Clearly, also, if without specifying the particular districts in which gasoline stations will be permitted, the ordinance established standards for such stations and the board then, upon application, rezoned property conforming to such standards, its action would be legislative (Rodgers v. Village of Tarrytown, 302 N. Y. 115; Nappi v. La Guardia, 295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775; Congregation Beth Israel v. Board, of Estimate, 285 App. Div. 629, 637). The general practice, however, is to specify in the Zoning Ordinance the districts in which gasoline stations will be permitted, but condition use of property in such a district upon the issuance of a special permit, after a hearing. Power to issue such a permit may be delegated to the planning board or board of zoning appeals, provided standards sufficiently definite to guide such board are adopted (Matter of Little v. Young, 299 N. Y. 699; see Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189). Action by a planning board or board of zoning appeals under such a delegation is, however, administrative (Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86; Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534, appeal dismissed 309 U. S. 633). Difficulty in characterizing the nature of the action taken arises when, as here, the zoning ordinance specifies districts in which such gasoline stations may be erected, but reserves to the legislative body itself, that is, to the village board, the power to grant the special permit or exception.
It is settled law that in such case the board is not required to prescribe standards under which permits or approvals must be granted; that determination “is left to the untrammeled, but of course not capricious, discretion of the Board.” (Green Point Sav. Bank v. Board of Zoning Appeals, supra; Matter of Larkin Co. v. Schwab, 242 N. Y. 330; Matter of Church v. Bouyea, 246 App. Div. 109, affd. 272 N. Y. 422; Matter of Lemir Realty Corp. v. Larkin, supra; Matter of Olp v. Town of Brighton, 173 Misc. 1079, affd. without opinion 262 App. Div. 944.) Nonetheless, an exercise of such discretion may be set aside (1) if discriminatory (N. Y. Const., art. I, §§ 6, 11; Village Law, § 89, subd. 30, § 178; Green Point Sav. Bank v. Board of Zoning Appeals, supra; Matter of 109 Main St. Corp. v. Burns, 14 Misc 2d 1037); (2) if not “ pursued in the mode required by law ” (Civ. Prac. Act, § 1296, subd. 4); (3) if based solely upon grounds which, as a matter of law, may not be considered (Matter of Larkin Co. v. Schwab, supra; Matter of Hempstead Bottling Works Corp. v. Patterson, 117 N. Y. S. *900 2d 103, appeal dismissed 282 App. Div. 1063; Zelazny v. Town Board, 101 N. Y. S. 2d 178); or (4) if arbitrary or unreasonable (Matter of Rothstein v. County Operating Corp., supra; Green Point Sav. Bank v. Board of Zoning Appeals, supra).
While the petition herein uses the word “discriminatory” nothing is set forth in the petition or accompanying papers to show discrimination in fact. Further, no contention is made that article XXVII of the zoning ordinance was not adopted in the manner prescribed by section 179 of the Village Law or that the hearing provided for in article XXVII was not advertised and conducted as required by the ordinance. Except as hereafter incidentally discussed, therefore, the first two of the above four points may be disregarded.
The third question: What may be legally considered by a town or village board in exercising its reserved special exception power? — turns on whether the board is acting legislatively or administratively. If its action is administrative, the source of its authority is the ordinance. In that case it may not impose standards, requirements and conditions not laid down in the ordinance (Matter of Community Synagogue v. Bates, 1 N Y 2d 445; Blatter of Small v. Moss, 279 N. Y. 288); and if all the standards set forth in the ordinance are met, the board must issue the required permit (see Matter of Lemir Realty Corp. v. Larkin, supra). If, on the other hand, it is acting legislatively, the source of its authority is section 177 of the Village Law (or, with respect to town boards, Town Law, § 263, which is identical) and, as we have seen, the ordinance need not set forth any standards. Where, however, the ordinance by which the board grants itself the special exception power sets forth policies and standards, a question arises concerning the effect of the latter. Generally, it is held that by so doing the board has not divested itself of the power of further regulation (Rodgers v. Village of Tarrytown, supra; Matter of Olp v. Town of Brighton, supra) though, of course, a question may be raised concerning the mode of procedure whereby that further regulátion is adopted. But if the standards set forth are so complete in coverage and precise in detail that it may be said that the board has legislatively determined that conformance to those standards entitles an applicant to a permit, the reservation of the special exception power to itself will not empower the board to go beyond the ordinance in denying a permit (Matter of Holmes & Murphy v. Bush, 6 A D 2d 200; Matter of Fucigna v. Sahm, 15 Misc 2d 304; Matter of 4M Club v. Andrews, N. Y. L. J., Sept. 10, 1959, p. 12, col. 4; Blatter of Hugel v. Town Board, N. Y. L. J., May 3, 1956, p. 13, col. 5; see *901 Zelazny v. Town Board, supra; Matter of Nicholas Prefabrications v. Sahm, N. Y. L. J., Sept. 23, 1953, p. 525, col. 3; cf. Sibek v. Sahm, 132 N. Y. S. 2d 596). To hold otherwise would be to permit the board to amend the ordinance without compliance with sections 178 and 179 of the Village Law. Article XXVII of the instant ordinance expressly states that its provisions set forth only “ minimum requirements.” Clearly, therefore, the Village Board did not intend to divest itself of further power. It should follow that except as the board, by having designated service stations a conditionally permitted use in “G-G” districts and thus determined that a service station in petitioner’s shopping center is permissible, has foreclosed itself with respect to the reasons it now advances for denial of a permit (Matter of Rhodes v. Waters, 15 Misc 2d 119; Matter of 109 Main St. Corp. v. Burns, supra; see Matter of Syosset Holding Corp. v. Schlimm, 15 Misc 2d 10, mod. 4 A D 2d 766 [which, however, involved a board of appeals, not a village board]; cf. Matter of Olp v. Town of Brigton, supra) it may now consider any reason within the language of section 177 of the Village Law. That section provides that: “ Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, flood, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.” As we shall see in analyzing the reasons advanced by the board in the instant case, however, most of the decided cases on service station permits hold, under ordinances worded in language substantially similar to the instant ordinance, that reasons clearly within the above language may not be considered.
Whether the board acts legislatively or administratively is also a pivotal point in determining the court’s function and the burden upon the applicant upon review of the fourth of the above-listed points, the arbitrariness or" unreasonableness of the board’s determination. If the rules for review of legislative action are to be applied to board rulings upon applications for service station permits, the action will be upheld if a legitimate *902 exorcise of the power granted by applicable constitutional and statutory provisions. Review “ as to reasonableness” in such a case means and is limited to the question whether the action has a reasonable relationship to the power granted the board. Legislative action is presumed to be supported by facts known to the legislative body, and in the absence of factual foundation in the record demonstrating the basis for overthrowing it, will be upheld. A heavy burden rests on the petitioner to demonstrate that the action taken is not justified under the granted power by any reasonable interpretation of the facts. The legislative body is under no obligation to come forward with evidence to sustain its determination nor to make findings of fact. If the validity of the regulation is fairly debatable, the legislative judgment must be allowed to control (Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269; Wiggins v. Town of Somers, 4 N Y 2d 215; Matter of Presnell v. Leslie, 3 N Y 2d 384; Shepard v. Village of Skaneateles, 300 N. Y. 115; Matter of Lemir Realty Corp. v. Larkin, 7 A D 2d 869, supra; Church v. Town of Islip, 8 A D 2d 962; Matter of Cunningham v. Planning Bd., 4 A D 2d 313; Greenberg v. City of New Rochelle, 206 Misc. 28, affd. 284 App. Div. 891, appeal dismissed 308 N. Y. 736; Matter of Tartasky v. Larkin, 13 Misc 2d 648; Matter of Turner v. Cook, 9 Misc 2d 850).
If, on the other hand, the board acts administratively, it must set forth the factual basis of its determination in order that the reviewing court may determine whether the decision conforms to the standards prescribed for the particular action (Matter of Holmes & Murphy v. Bush, supra; Matter of Syosset Holding Corp. v. Schlimm, 4 A D 2d 766, supra). It may act on personal knowledge or physical inspection of the premises, but if it does so, must set forth in its return a statement of the facts so derived upon which it relies (Matter of Community Synagogue v. Bates, supra; Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39; Matter of Syosset Holding Corp. v. Schlimm, supra). In review of administrative action, a court will consider only those grounds invoked by the board (Matter of Barry v. O’Connell, 303 N. Y. 46; Matter of Larkin Co. v. Schwab, supra) and will direct its inquiry to whether the reasons given are legally adequate, whether the decision follows as a matter of law from the facts stated as its basis, and whether on the whole record the findings of fact have any substantial support in the evidence (Matter of Barry v. O’Connell, supra). Review “as to reasonableness” in this context means determination whether, taking into consideration all of the evidence on both sides, there is substantial evidence in the record to *903 support the factual findings of the board and whether those findings constitute a rational basis for the discretion exercised, The court may not substitute its judgment for that of the board, however, and will not disturb the decision of the board unless so clearly arbitrary as to constitute an abuse of discretion (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508; Matter of Community Synagogue v. Bates, supra ; Matter of Colgate-Palmolive-Peet Co. v. Joseph, 308 N. Y. 333; Matter of Russo v. Stevens, 7 A D 2d 575; Matter of Graff enburg Dairy v. Du Mond, 278 App. Div. 428; Matter of Syosset Holding Corp. v. Schlimm, 15 Misc 2d 10, mod. 4 A D 2d 766 supra; Matter of Rhodes v. Waters, supra; 1 Benjamin, Administrative Adjudication, pp. 328, 344, 353; Goldstein, Judicial Review of Administrative Action, 2 Syracuse L. R. 199, 205).
Analysis of the reasons advanced by the board, in its resolution of denial and in the affidavit submitted in this proceeding, against this background and against the decided cases, leads to the conclusions that (1) in the majority of special exception cases involving service stations, the rules governing review of administrative action are applied to the action of the town or village board, and (2) that the denial of a permit in the instant case must be sustained if the action is considered legislative but overruled if it is considered administrative. Turning first to the reasons in the resolution, we find the hazard to Merrick Road traffic mentioned first. Traffic problems may be considered by zoning authorities if “ such policy or standard was declared in the statute” or ordinance (Matter of Diocese of Rochester v. Planning Bd., supra, p. 575), but an administrative body may not consider traffic problems if not authorized to do so by statute or ordinance (Matter of Small v. Moss, supra; Matter of Brooklyn Parking Corp. v. Cannella, 193 Misc. 811; Matter of 4M Club, v. Andrews, supra). Section 177 of the Village Law provides that zoning regulations are to be “ designed to lessen congestion in the street,” and it should follow, if a village board acts legislatively in ruling on special permits, that the traffic hazard may properly be considered by the board (Matter of Turner v. Cook, supra; Zelazny v. Town Board, supra; see Matter of Larkin Co. v. Schwab, supra). Yet there are1 a number of cases holding that a village or town board may not consider traffic problems in special exception cases (Matter of Fucigna v. Sahm, supra; Matter of 109 Main St. Corp. v. Burns, supra; Matter of Edelman v. Town Board. 14 Misc 2d 953; Linn v. Town of Hempstead, 10 Misc 2d 774; Greenberg v. City of New Rochelle, supra; Huntley Estates v. Town of Eastchester, 121 N. Y. S. 2d 504, mod. 283 App. Div. *904 1090; see Matter of Property Owners v. Board of Appeals, 2 Misc 2d 309). Since section 177 of the Village Law (or Town Law, § 263) would have so authorized if the action was legislative, it must be concluded either that the provisions of those sections were overlooked by the courts involved or that each considered that the rules governing administrative action applied to special exception cases. There are also several cases in which traffic hazard has been considered under the rules for review of administrative action and the denial of a service station permit overruled because there was either no evidence or insufficient evidence to sustain the action of the board; Matter of Pratt v. Larkin (N. Y. L. J., June 8, 1959, p. 17, col. 3) and Sibek v. Sahm, supra (both of which involved town boards); Matter of Syosset Holding Corp. v. Schlimm, supra (which involved a village board of zoning appeals, an administrative body).
If the “ traffic hazard” reason is tested' against both sets of review rules, what is the result? If the board acted legislatively, its consideration of the traffic danger was proper and the presumption of validity has not been overcome, for the only contrary indication put into the record by petitioners was the statement of its real estate expert that “ a gas station would not make such a great difference in the amount of traffic ” and a printed statement from the National Fire Protection Association Quarterly for 1955 showing that studies in Detroit, Pittsburgh and Washington, D. 0. led experts to conclude that service stations are not hazards to pedestrian or vehicular traffic provided driveways are of proper width and properly located in relation to the intersection. There is, however, nothing in the record to show the driveway width and location of the proposed station and neither a study of traffic at this particular location nor at similar localities. The statement above is insufficient to overcome the presumption of validity accorded the particular legislative act in question. If, on the other hand, the action of the board is deemed administrative, “ traffic hazard ” should not be considered because not referred to in the ordinance, but in any event must be rejected because there is no substantial evidence in the record to sustain it. Several objectants stated that the station would cause traffic congestion, but such statements being the unsupported opinions of nonexpert witnesses cannot, particularly in the light of the National Fire Protection Association Quarterly data referred to above, be characterized as the kind of evidence on which responsible persons are accustomed to rely in the conduct of serious business affairs (1 Benjamin, Administrative Adjudica *905 tion, p. 190). Neither do the statements made in the village, affidavit support this reason: those concerned with access to the Wenwood development because the map in the record shows that there is another means of access than Whitewood Road; those detailing that the station will “ perhaps increase tenfold the traffic congestion ” because unsupported; those related to the fact that the station will increase the traffic hazard by using space formerly allocated as parking space for shopping center patrons, because the parking area will still exceed that required by the Zoning Ordinance for the center and, therefore, projection of a traffic hazard is either a non sequitur or at least mere conjecture.
The second reason given by the board is that the proposed site is directly opposite the high school. The board’s statement does not spell out why that factor is important, but if the action is legislative, need not do so; if any reasonable interpretation of the facts sustains the action, it will be upheld. Among the purposes set forth in section 177 of the Village Law are “ safety from fire ” and “ to facilitate the adequate provision of * * * schools.” The fire danger inherent in the storage and use of gasoline and oil has been judicially noticed (Green Point Sav. Bank v. Board of Zoning Appeals, supra; Matter of Tartasky v. Larkin, supra; Matter of Turner v. Cook, supra; Hilton v. Board of Appeals, 18 N. Y. S. 2d 213; contra: City of Little Falls v. Fisk, 24 N. Y. S. 2d 460), and will support denial for a permit for a gas station next to a public school, or an ordinance prohibiting stations within a given distance of a school or place of public assembly provided the distance bears a reasonable relation to the fire hazard (Matter of McIntosh v. Johnson, 211 N. Y. 265; Green Point Sav. Bank v. Board of Zoning Appeals, supra; 1 Rathkopf, Zoning, p. 353). The traffic danger to school children approaching the school on foot is also a matter that may be considered by a legislative body acting under the above-quoted provisions of the statute. There is in the record in refutation of this latter point only the general study referred to above, and no specific data showing what the pattern of pedestrian traffic of the school children at the high school is. The court would, therefore, sustain the second reason, were the board acting legislatively, because petitioner cannot be said to have demonstrated that the action taken is not justified by the granted power under any reasonable interpretation of the facts.
If the second reason is considered as in support of administrative action, it cannot, however, be sustained. First, the statement that the site is directly opposite the high school is not
*906 factually accurate. The site is opposite a portion of the high school grounds, but as above-stated, that portion of the grounds facing the station site is vacant except for a few trees. With respect to the traffic danger for children on foot in the area, there is nothing in the record to show that any greater danger arises in this respect from the proposed station than already exists from the shopping center and its parking lot, which accommodates 2,500 cars. There would appear to be little or no reason for the children to walk through or by the station to go into the shops in the center since more direct paths exist between both the high school and the elementary school entrances and the shops. With respect to the fire hazard, the station will be separated from the school building by Merrick Road, which is a wide arterial highway, and by the school yard. While the exact distance of that separation is not shown, the petitioner’s evidence does show that whatever the danger of fire from gasoline and oil were at the time the Green Point Sav. Bank case (supra) was decided, present-day packaging, storage and dispensing methods have so reduced the danger that there are twice the number of fires in schools per hundred schools (3.34) that there are in service stations per hundred stations (1.65); that the dollar fire loss for schools is approximately eight times that for service stations; and that a building occupied as a service station, without repair shop facilities other than tire, battery and brake service, carries the minimum rate, according to the New York Fire Insurance Rating Organization. In support of this evidence may also be cited the statement quoted in Matter of Russo v. Stevens (supra) concerning a gas station permit granted in Ithaca, that “The Fire Department reports to us that gas stations are not unusual sources of fire 7 ’ and the determination with respect to an illuminating gas holder made in Town of Greenburgh v. Westchester Lighting Co. (217 App. Div. 263, 271, 273). It must, therefore, be concluded that there is not on the whole record substantial evidence either that the location of the proposed station with respect to the schools would be dangerous or that the station would constitute a fire hazard.
Either or both the fire hazard or pedestrian danger to school children was reviewed under the rules relating to administrative review in all of the following cases, in each of which the permit had cither been issued by the board or was ordered issued by the court (Matter of Rothstein v. County Operating Corp., 15 Misc 2d 340, affd. 6 A D 2d 711, affd. 6 N Y 2d 728; Matter of Fucigna v. Sahm, supra; Matter of Rhodes v. Waters, supra; Matter of 199 Main St. Corp. v. Burns, supra; Matter *907 of Pal Sexto Corp. v. Larkin, N. Y. L. J., July 8, 1959, p. 5, col. 7; Matter of Pratt v. Larkin, N. Y. L. J., June 8,1959, p. 17, col. 3; Sibek v. Sahm, supra).
The third reason listed in the board’s resolution is that there are numerous gasoline stations in the vicinity of the proposed site. Nothing in section 177 of the Village Law or in the ordinance or in any other provision of law to which the court has been referred authorizes the board, whether it acts legislatively or administratively, to take into consideration the number of existing stations. Where the Legislature has so intended, as with respect to liquor stores, it has clearly so stated by conditioning issuance of the permit upon “ public convenience and advantage ” (Alcoholic Beverage Control Law, §§ 2, 101, subd. 1; Matter of Barry v. O’Connell, supra). In any event, nothing in the record shows a relationship between the number of stations in existence and the number of automobiles to be serviced, nor is a relationship to public health, safety or welfare shown. This reason is, therefore, insufficient (Matter of Fucigna v. Sahm, supra; Matter of Blumenreich Properties v. Waters, 14 Misc 2d 947; Matter of Lawfred Realty Serv. Corp. v. Waters, 15 Misc 2d 113; Sibek v. Sahm, supra; Longo v. D’Abramo, N. Y. L. J., Nov. 19, 1957, p. 13, col. 3; contra: Matter of Turner v. Cook, supra).
The fourth reason is that the gasoline station was not set forth on the developer’s 1952 plan when submitted to the board. The short answer is that gas stations were a prohibited use in 1952 and, therefore, could not be shown. Having revised the ordinance to permit such stations, the board cannot prevent petitioner from applying under the revised ordinance because it did not declare its intention to do so before it was permitted to do so, or because it meanwhile has used the property for another permitted use. As stated above, the board admits that there will be no violation with respect to the shopping center if the proposed station site is changed from parking to service station use.
The last reason given in the resolution is that erection of the station would not be for the general welfare and safety of the inhabitants of the village and would depreciate neighboring residential property. Section 177 of the Village Law authorizes regulation “ to promote * * * the general welfare,” “ to secure safety,” and “ with a view to conserving the value of buildings and encouraging the most appropriate use of land.” The safety question has been dealt with above. As concerns “ general welfare,” the reason though conclusory would, if the action be legislative, be sustained because a reason *908 able interpretation of the facts relates traffic hazard to general welfare. But, if administrative, the reason would be rejected because conclusory (Matter of Barry v. O’Connell, supra) and because the burden is not on petitioner to show affirmatively that his proposed use accords with the general welfare (Matter of Rhodes v. Waters, supra; Matter of Lawfred Realty Serv. Corp. v. Waters, supra; Matter of Blumenreich Properties v. Waters, supra). As concerns property depreciation, while it may be considered by the board acting legislatively (Matter of Presnell v. Leslie, supra) the board foreclosed the question by its adoption in 1958 of article XXVII permitting gasoline stations in “ GG ” districts, petitioner’s property then and now being the only “ GG ” district in the village and the surrounding property all being zoned residential at that time (Matter of Fucigna v. Sahm supra; Matter of 109 Main St. Corp. v. Burns, supra; Sibek v. Sahm, supra; contra: Matter of Turner v. Cook, supra). In any event, the expert opinion of petitioner’s vice-president is that property in the area will not be depreciated, and is countered by nothing except the unsupported statements of objectants at the hearing, none of whom are shown to be qualified to speak on the subject. ■ It is difficult for the court to see how the addition of a gasoline station to an existing shopping center accommodating 2,500 cars can have effect, over and above that of the shopping center, on surrounding values. In any event, if the board action is considered administrative, there is, on the whole record, no substantial evidence that values will be depreciated.
Additional reasons for the board’s denial of the permit may be gleaned from the affidavit submitted on behalf of the village. These are (1) that at the hearing the great majority of residents opposed the application and petitions were filed against it, (2) the proposed site is really the whole shopping center which is abutted by residential' property, and, therefore, it cannot be said that, as article XXVII requires, the site is abutted on side and rear by property zoned “ G ” or “ GG ”, (3) that use of the area for the station will detract from the parking space available for the center, and (4) the side streets may become “ testing ” streets, thus creating additional danger to residents. Section 179 of the Village Law requires passage of a zoning change by two-thirds vote of a three-member village board, or by three-fourths vote in all other villages, if the change is protested by owners of 20% or more of land included in the change, or of the land adjacent and within 100 feet of the change or of.the land opposite and within 100 feet of the street frontage of the land opposite the change. No other provision of law to *909 which the attention of the court has been called gives the mere objection or protest of residents or owners of nearby land any operative effect. Mere protest, as distinct from the establishment by acceptable proof of legal objection, does not constitute a valid reason for denying a permit. Public hearings on such permits are salutary, but the reasons advanced at such hearing to sway the exercise of discretion, must have a legal, rather than a purely personal, basis.
The argument that the proposed site is not abutted on the rear and side by “ GG ” district property is revealed as specious when it is recalled that article XXVII was enacted after petitioner’s property was zoned “ GG ” and that its property is the only “ GG ” property in the village. To uphold this contention would make nugatory that portion of article XXVII which makes a service station a conditionally permitted use in a “ GG ” district. Equally specious is the parking space objection, since it was admitted on argument that, excluding the proposed site, the shopping center still has more parking area than required by the ordinance. Nor may the conjecture, and it is nothing more than conjecture, that one or more of the side streets may be used to “ test” automobiles be upheld as a reason for denial. Ample authority to control such use of the streets by appropriate traffic regulation exists and may be brought into play should the conjecture become fact at some future time.
The question remains: How is the action of the Village Board on petitioner’s application for a service station permit to be considered? The line of cases determining that as a matter of article 78 procedure, the action is legislative (which began with Matter of Parkplain Realty Corp. v. Town Board, 137 N. Y. S. 2d 474) has been overruled by the Rothstein case (supra). That ruling, considered against the background of article 78, which provides for review of judicial, quasi-judicial, and administrative, but not legislative, action (Civ. Prac. Act, § 1284), suggests that for the purposes of review, at least, the action is to be considered administrative. Cases may be found both ways, however. There are a number of cases holding flatly that the action is legislative in nature and applying the rules for review of legislative action (Matter of Cunningham v. Planning Board, supra; Matter of Tartasky v. Larkin, supra; Matter of Turner v. Cook, supra; Matter of Olp v. Town of Brighton, supra). Others just as flatly hold that the action is administrative (Matter of Fucigna v. Sahm, supra; Copp v. Mead, N. Y. L. J., April 24,1956, p. 14, col. 7; Hugel v. Town Board, supra); and, as has been demonstrated above, the great majority of cases, without *910 analyzing the character of the action, apply the substantial evidence rule or otherwise make clear that the court is applying the rules for review of administrative action.
The correct answer appears to be that both, the board’s action and the rules for its review are hybrid in nature. So far legislative that (1) notwithstanding the omissions of standards from the village ordinance the board may consider any reason within the language of section 177 of the Village Law unless such reason has been foreclosed by the provisions of the ordinance or the inferences necessarily arising from its passage, and (2) the board need not make the findings of fact normally required of administrative bodies, the action is nonetheless to be judicially reviewed under the rules governing the exercise of administrative discretion. This conclusion is supported not only by the inference arising from the Rothstein holding, but also by several considerations of policy. First, by enacting the ordinance which makes service stations a conditionally permitted use in specified districts (in this case, article XXVII) the board has, acting legislatively, dealt with the general zoning problems involved — whether such a use in that district is consistent with the general welfare and accords with the comprehensive zoning plan. If its action on a special permit is considered legislative, in full meaning of the word, a board would have discretion, as the board has sought to do in this case, to deny a permit because the use was not consistent with general welfare and the zoning plan. Yet, in effect, this would be to permit the board when acting on a special exception to amend its ordinance without complying with the statutory requirements for notice and publication set up in section 179 of the Village Law. Second, while public interest requires that enactment of the general ordinance (in this case, art. XXVII) be hedged about with the protecting cover of the rules governing judicial review of legislative action, the same public interest mandates that special exceptions in individual cases be subjected to the closer scrutiny accorded review of administrative action. As Chief Judge Cardozzo stated in another context in People ex rel. Fordham M. R. Church v. Walsh (244 N. Y. 280, 290-291) “ There has been confided to the Board a delicate jurisdiction and one easily abused * * * Disclosure is the antidote to partiality and favor.” That case also makes clear that neither the board, nor objectants, nor applicants are restricted to legal evidence at a special exception hearing. “ It is enough that reasonable men could view [the evidence] as entitled to probative effect.” To impose upon a village or town board dealing with a special exception application the *911 obligation of meeting evidence adduced by applicant with sufficient in support of its own point of view to constitute “ substantial evidence on the whole record ” (1 Benjamin, Administrative Adjudication, p. 328) creates no undue burden for such a board, but protects the applicant against partiality or caprice. (See Matter of Fucigna v. Sahm, supra; Matter of 109 Main St. Corp. v. Burns, supra.)
In the instant case there is, as has been shown, no substantial evidence to support the board’s denial of the permit. Further, by enacting article XXVII after petitioner’s property was zoned ‘ ‘ GG ’ ’ and knowing that the shopping center was the only “ GG ” property in the village, the board made clear that a service station which complied with safety requirements was permissible somewhere on the petitioner’s property. It is not contended that petitioner’s plans for the station do not comply with safety requirements, and nothing in the record requires the conclusion that the particular site involved is more peculiarly subject to the objections set forth by the Village Board than any other portion of the tract. In other words, there is nothing to support the board’s overruling, by denying the special permit application, the inferences arising from its earlier legislative action in adopting article XXVII. It follows, therefore, that unless the court is required by section 179-b of the Village Law to take evidence, the board should, on the present record, be ordered to issue the permit sought.
Section 179-b of the Village Law authorizes Special Term to take evidence 1 ‘ if it shall appear that testimony is necessary for the proper disposition of the matter,” and to dispose of the cause on the merits. Those powers are, however, incident only to the duty of tho court to review the contested determination, and do not authorize consideration. $e novo by Special Term (People ex rel. St. Albans-Springfield Carp. v. Connell, 257 N. Y. 73; People ex rel. Hudson-Harlem Co. v. Walker, 282 N. Y. 400; Matter of Cunningham v. Planning Bd., supra; see Matter of Pratt v. Larkin, 7 A D 2d 869, 870). The village has denied all of paragraph 14 and practically all of the allegations of paragraph 13 of the petition, but there is no contention that it and the objectants at the hearing did not have the opportunity to present all the evidence at that hearing that was available to them, nor has a request for a hearing or any offer of additional proof been made by any party. The allegations of paragraph 14 are formal and only the allegations set forth in subpargraphs (a), (b), (c), (j), (k), (1) and (q) of paragraph 13 are material Neither as to those allegations nor as to any supplementary data set forth in respondents’ affidavit *912 has any triable issue of material fact been raised. The court, therefore, concludes that testimony is not necessary for the proper disposition of this matter. Accordingly, the prayer of the petitioner is granted, the determination of the Village Board is annulled and the matter is remanded to the board with directions to consider and rule upon the application for waiver of the full basement requirement and then to issue a permit to petitioner subject to such conditions only as the board usually requires of gasoline station operators.
Settle order on notice.