G. Robert Wither, J.
Petitioners have brought this article 78 CPLR proceeding for an order annulling the action of respondent City Council in amending tlieir Genesee Crossroads Urban Renewal Plan to include real estate at number 34 State Street, Rochester, New York. Petitioners are office tenants in the building at number 34 State Street and they assert that respondents’ action is illegal and arbitrary and results in undue hardship to the “ residents ” thereof in violation of law.
It appears that pursuant to article 15 of the General Municipal Law, enacted in 1961 (L. 1961, ch. 402), authorizing urban renewal projects, respondents in 1963 established the Genesee Crossroads Urban Renewal Project NYR-80 for the demolition of the buildings in an area in the City of Rochester between Bast Main Street on the south, Central Avenue on the north, St. Paul Street on the east and State Street on the west, with the exception of certain properties on the outer edges of such area. Number 34 State Street was one of the properties excepted. It was planned that, after demolition of the buildings, the land would be sold to private developers upon suitable conditions for improving the area. In connection with the proposed sale of a portion of the project area known as parcel 4, Four Corners Development Corporation made a bid to the city upon the condition that some property not then included in the renewal project area, also be sold to it with parcel 4. Number 34 State Street was part of this additionally sought property.
Respondent City Council referred to the City Planning Commission the matter of adding such property to the project area. Upon due notice the commission conducted a public hearing with reference to the matter and recommended that properties at numbers 6 and 16 State Street, designated as parcel 4-A, be added to the project area and that property at number 34 State Street, designated as parcel 4-B, be excluded therefrom. Upon receipt of the report of the City Planning Commission the City Council published notice of a public hearing on the question, including specifically whether parcels 4, 4-A and 4-B should be sold to Four Corners Development Corporation pursuant to its conditional offer. The hearing was held on December 30, 1965, after which the council unanimously (see General Municipal Law, § 505, subd. 3, pars, [b], [c]) adopted an ordinance amending their prior ordinance establishing the Genesee Crossroads Renewal Project so as to include parcels 4-A and 4-B. It appears that, prior to December 30, Four Corners Development Corporation had increased its offer to the city by the sum of $75,000. . Petitioners brought an article 78 CPLR proceeding against the City Planning Commission to determine that the commis *662 sion’s action was erroneous and invalid. That petition was dismissed by Mi'. Justice William G. Easton by order signed January 28, 1966 on the grounds (1) that the question was academic in view of the subsequent independent action of the City Council and (2) that since the Planning Commission’s action did not finally determine the rights of the parties, the proceeding did not lie.
Petitioners then instituted the instant proceeding. In their answer respondents make a general denial except they admit that petitioners had instituted certain other proceedings, and they allege that since the beginning of the instant proceeding, petitioners on February 14, 1966 served respondents with a summons and complaint in a taxpayer’s action under section 51 of the General Municipal Law; and they further allege that the court is without jurisdiction to determine that the acts of the respondent council were arbitrary and capricious.
The first point raised by the petitioners herein is that, upon approving the renewal plan for the amended designated project area, respondent council failed to make new findings that the amended area is “substandard or insanitary” and that the taking would not cause undue hardship to displaced residents, as provided in subdivision 4 of section 505 of the General Municipal Law. Upon the argument, respondents urged that the reference to subdivision 3 of section 502 of the General Municipal Law in the ordinance of December 30 was sufficient compliance in this respect; but in their brief they ask the court to take judicial notice that on March 22, 1966 the respondent council enacted an amendment of the December 30 ordinance, making the findings required by the statute. Judicial notice is taken of said amending resolution of March 22, 1966. Even so, petitioners argue that the amendment of March 22, 1966 was made without a hearing, and hence is invalid. But the hearing had been held at the meeting of December 30; and the amendment of March 22 was merely to correct the ordinance enacted on December 30.
The statute (§ 505, subd. 4) does not specify when the governing body shall make the necessary findings, although presumably it was intended that they be made before or at the time of enacting the ordinance. It is to be presumed that the council acted lawfully, and if the ordinance fails to recite all of the steps which the council took, there seems no reason why it could not later be amended to reflect what the council did. Moreover, there is nothing before me to indicate that the city signed a contract with the Four Corners Development Corpora *663 tion before the ordinance was amended on March 22, 1968. In petitioners’ brief, page 6, they state that respondents have not followed the statute “ in the signing of the contract with Four Corners Development Corporation as sponsors but that is not evidence that in fact respondents had already signed the contract. From respondents’ brief submitted April 6, 1966 it may be inferred that such contract had then been executed. In any event, the ordinance of December 30 has been amended to comply with the statute, and the court accepts it as effectively establishing the amended renewal project and supporting the execution of the contract.
Petitioners also urge that the city had no right to contract to sell property title to which it had not acquired. The court accepts respondents’ answer that they have not sold the property but have merely contracted to acquire and sell it. The advantage to the success of the whole project of having a ‘ ‘ lead ’ ’ contract for a substantial development is readily apparent. However prudent such action by the City Council may be, respondent council had the power to make such contract. The electorate, not the courts, may sit in judgment upon such acts (cf. Matter of Sulli v. Board of Supervisors, 24 Misc 2d 310, 315). The objection that respondents did not solicit bids from others than Four Corners Development Corporation is not well taken in view of section 507 (subd. 2, par. [d]) of the General Municipal Law which expressly authorizes the procedure adopted by respondents, that is, of conducting a public hearing on the specific offer.
Petitioners’ further objection that the council have improperly undertaken the project piecemeal and in stages is rejected. The amendment was made of the whole project before any action was taken to rebuild the area; and it does not constitute a carrying out of the project in stages within the meaning of the last paragraph, unnumbered, of subdivision 4 of section 505 of the General Municipal Law. Moreover, the requirement of that subdivision that the governing body must find that the “ residents ” of the area involved in each stage will not be caused undue hardship and will be relocated, has little practical significance as to parcel 4-B in question, because there are no ‘ ‘ residents ’ ’ on the property, the occupants being merely office tenants (cf. General Municipal Law, § 505, subd. 4, par. [e]). Here again, however, against the possible construction that the amendment constitutes carrying out the project in stages, respondent council enacted the amending resolution of March 22, 1966 which cures such alleged defect.
*664 The principal contention of petitioners is that the action of respondents in declaring number 34 State Street a substandard or insanitary area was arbitrary and capricious, that the structure on that site is a modern, wholesome one, and that by taking it the council is subverting the condemnation laws of the State. At this point it should be noted that subdivision 4 of section 502 and subdivision 4 of section 505 of the General Municipal Law require a finding that the ‘ area ’ ’ in general is ‘ substandard or insanitary ’ ’, and not that each parcel and building is in such condition. Petitioners’ argument is twofold, (1) that respondent council have not submitted findings of fact in their answer from which the court may determine that there was a reasonable basis for the council to reach their conclusion, and (2) that in any event the action was in excess of the council’s power and was unlawful.
It is elementary law that the legislative acts of a municipal governing body are beyond review by the courts as to reasonableness (Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121; Matter of Gellis v. Clark, 32 Misc 2d 597, 600); and only when such body’s action is administrative need they make findings of fact and a return thereof to a court in an article 78 CPLR proceeding (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20). Petitioners contend that the acts of respondent council in amending the ordinance on December 30 to include number 34 State Street Avere administrative; that therefore they were required to make findings of fact to show a reasonable basis for determining that said State Street property is substandard or insanitary; and that for their failure to make such findings and include them with the ansAver and return herein, petitioners are entitled to an order vacating the ordinance (see Matter of Bar Harbour Shopping Center v. Andrews, 23 Misc 2d 894, 898).
Whether a governing body’s action is legislative or administrative is often difficult to determine. (See Matter of Bar Harbour Shopping Center v. Andrews, supra.) One test of its character is that when such body acts legislatively, the source of their authority is the statute under Avhich they act, and Avhen they act administratively the source of their authority is an ordinance previously enacted and under which they act. (Ibid., pp. 900, 910-911.) In zoning, where a municipal council have enacted the ordinance Avith authority to a zoning board to grant variances, in certain situations, of course the zoning board must make findings, and their actions are administrative. The character of the acts of respondent council in this case is made confusing by the fact that the statute under which the council *665 acted provides that the council shall make'findings. The distinction,- however, between the two situations is that the council are a legislative body whereas a zoning board are not. • The findings of fact referred to in the statute are similar to the facts often' recited in the preamble to legislation, of the specific evils sought to be corrected. In any event, the requirement of such findings in the statute does not render the acts of the respondent council administrative.
It seems clear to the court that respondent council was acting legislatively Avhen they enacted the original Genesee Crossroads Urban UeneAval Plan in 1963 and when they amended the plan on December 30, 1965. Both enactments were made pursuant to article 15 of the General Municipal Law. The Legislature having expressly authorized a body such as respondent council to make such enactments, the court has no power to interfere, upon the facts appearing herein. (See Kaskel v. Impellitteri, 306 N. Y. 73, 80; Matter of Gellis v. Clark, 32 Misc 2d 597, supra; Matter of Bar Harbour Shopping Center v. Andrews, 23 Misc 2d 894, supra.)
Petitioners make a cogent argument that upon this interpretation of article 15 of the General Municipal LaAAr and the ordinance of December 30 a city council can undermine all prior concepts of the condemnation laws; that the very existence of this power in the council renders all good buildings Avithin reach of an urban reneAval project subject to sudden confiscation by the city for use by some private developer; and that this constitutes such a threat to an area that such buildings may Avell be turned into substandard ones, because tenants will hesitate to take long-term leases therein or pay substantial rents therefor, and thus the laAV will bring about the very thing which it is intended to remedy.
Such argument, hoAvever, must be addressed to the Legislature. Legislation of this type has been upheld as constitutional in most States of the Union. (See Kaskel v. Impellitteri, supra, p. 94.) Petitioners’ argument was clearly set forth in the dissent in the Kashel case (pp. 83, 87) but the majority of the court did not accept it. In that dissent, hoAvever, Judge Vah Voorhis stated (pp. 85-86) that “ It by no means follows * *. * that buildings or vacant land which are not slum in character cannot be condemned if that is incidentally necessary in order to redevelop a slum area.” Article 15 of the General Municipal Law specifically so provides, as above noted-(§ 502, subd. 4; § 505, subd. 4).
*666 Under the. CPLR 103 (subd. [c]) the court is authorized to treat a proceeding as an action (Matter of Mandis v. Gorski, 24 A D 2d 181). Bespondents allege that petitioners have instituted a taxpayer’s action against them under section 51 of the General Municipal Law, and that such action is still pending. Since the’petitioners have not presented arguments concerning that aspect of the case, and facts to support such action have not been presented (see Kaskel v. Impellitteri, supra, p. 79; Rodin v. Director of Purchasing, 38 Misc 2d 362, 364), the court will not go beyond the bounds of the article 78 CPLR proceeding tendered herein.
The order sought is denied and the petition is dismissed.