█ In the Matter of NORTH SHORE STEAK HOUSE, INC., Appellant, v. BOARD OF APPEALS OF THE INCORPORATED VILLAGE OF THOMASTON et al., Respondents.

Hopkins, Acting P. J., Shapiro, Christ and Brennan, JJ., concur; Gulotta, J., dissents and votes to reverse the judgment, to annul so much of respondents' determination as denied petitioner's application for a special exception permit, to direct issuance of such permit, and to confirm so much of respondents' determination as denied petitioner's application for a use variance, with the following memorandum: Petitioner is the operator of a restaurant on Northern Boulevard in the Incorporated Village of Thomaston, at the northwest corner of the Summer Street intersection. The restaurant is on a split zoned plot fronting 181 feet on the Boulevard and 287 feet deep on Summer Street. The front 200-foot depth is zoned for business and is occupied by the restaurant building and a blacktopped parking area for 75 to 85 cars. The rear 87 feet are zoned residential and are unoccupied. Section 3 (subd. [e]) of article X of the zoning ordinance of the village provides that where a zone boundary line divides a plot in single ownership the Board of Appeals may grant a special exception to extend an authorized use 25 feet into the more restricted zone. No guidelines are set forth for the exercise of this power other than the general caveat set forth in the preliminary recital, that it be done "in harmony with the general purpose and intent of this ordinance." Petitioner applied for both a general variance for the entire 87 feet, excepting therefrom a 50 by 100-foot plot set aside in the northeast corner for a one-family residence, and also for a 25-foot special exception, to extend the restaurant parking field into the residential zone. The pleadings show that the plot has been in single ownership since 1903 and has been lawfully used as a restaurant since 1940. A similar application was made in 1957 and denied by the Board of Appeals. The denial was sustained by Mr. Justice HOGAN in an unreported decision which, however, is contained in this record at page A-152. It indicates in part that, since some relief was available to petitioner therein by sacrificing the lawn and some magnificient large trees, the court could not upset the board's ruling even though it might disagree with it. Removal of the trees and lawn has since taken place and this has increased the parking capacity on the property. However, there has also been a widening of Northern Boulevard, installation of a central mall and elimination of parking on the street in the interim, resulting in the loss of several dozen parking spaces in the area. Petitioner showed an acute need for more parking (see record, pp. A-63; A-67; A-134; A-158). Thus, business volume has increased since 1957. It needs 95 spaces, to accommodate approximately 188 customers. Twenty-two of its present 85 spaces are occupied by employees. Allowance of the special exception would have provided 25 to 30

additional spaces. I do not intend to discuss the general variance application in any detail, since I agree that a sufficient case was not made out to warrant it. I do not agree with the board's finding that petitioner created its hardship by constructing a small addition to the cloakroom which did not increase seating capacity, but which eliminated two parking spaces. Nor do I agree that when a person buys a parcel which already suffers from a genuine hardship that any rights are lost by reason of the purchase. The self-imposed hardship doctrine refers to a situation such as in *Matter of Clark* v. *Board of Zoning Appeals of Town of Hempstead* (301 N. Y. 86), where the very thing the applicant does or proposes to do brings the hardship into being. That is not this case, since petitioner's business was permissible. "Hardship" itself has nothing to do with a special exception and it follows that whether or not it is self-imposed is irrelevant. In a lengthy decision the Board of Appeals dealt almost entirely with the issues arising in the general variance aspect of the case — absence of uniqueness, financial loss, etc.— and then in a brief sentence erroneously applied the same test to the special exception application. The Special Term in its opinion never reached this special exception phase of the case at all. Yet this was the only phase requiring serious consideration, since, contrary to petitioner's position, severe pecuniary loss standing alone will not support a " use " variance, as distinguished from an area variance, or require the municipality to affirmatively show impairment of public health, safety or morals (cf. *Matter of Fulling* v. *Palumbo,* 21 N Y 2d 30), although *Socha* v. *Smith* (33 A D 2d 835, affd. 26 N Y 2d 1005) may cast some doubt on the proposition that the *Fulling* doctrine does not apply to " use " variances. There, a change in zone was sought from a single-family residence zone to multiple dwelling zone and *Fulling* was relied upon to require it. We find the usual stereotyped findings in the Board decision herein, but in my opinion this should not preclude a court from considering whether common sense supports them, as for example that the fumes and lights from these 25 additional parked automobiles would adversely affect the neighboring property where 85 automobiles are already parked in the same field. This becomes more incomprehensible when we note the requirement that there be at least ten feet of dense screening of trees and/or shrubs, under article VII-A of the zoning ordinance, were the special exception granted (see record, p. A-158). Furthermore, the nearest house would be some 60 feet beyond the shrubbery. Directly across Summer Street, on the northeast corner of the intersection, is a large gasoline service station and in back of that, in the residential area, is an enormous municipal water tank and several other parking incursions into the residential area in the immediate vicinity greater than 25 feet (see record, pp. A-105, A-115, A-118). It is self-contradictory to say, in a special exception case, that to grant it would not be in harmony with the intent and purpose of the zoning plan. As was observed in *Matter of Syosset Holding Corp.* v. *Schlimm* (15 Misc 2d 10, 11–12, mod. 4 A D 2d 766) : " The zoning ordinance itself plainly implies the contrary. The grant of permission for such use, although subject to approval by the Zoning Board of Appeals, shows that the legislative body of the village found that the construction and maintenance of such uses in business districts is in harmony with the public interest and within the general scope and plan of the zoning ordinance. Otherwise, such use would have been prohibited by the ordinance in such districts and permitted only by way of variances upon proof of unnecessary hardship in each case. It therefore became the duty of the Zoning Board of Appeals to determine whether, upon the proof before it, the proposed use met all of the standards enumerated in the ordinance. If it failed to meet one or more, the board was bound to deny a special exception. Conversely, if all the standards were met, it was under a duty to

grant the request, since a gasoline station is, by the terms of the ordinance, a conditionally permitted use, rather than one requiring a variance (Zoning Bulletin ,No. 74, Regional Plan Association, Dec. 1954)." It seems to me that this is a correct exposition of the approach to be adopted in a special exception review. (See, also, *Matter of Long Is. Lighting Co.* v. *Griffin*, 272 App. Div. 551.) Of course, the court does not consider the question *de novo*, but that does not mean the review should not be meaningful and realistic. In *Matter of Bar Harbour Shopping Center* v. *Andrews* (23 Misc 2d 894) the court expressed somewhat the same idea, although there it was dealing with a decision by a Village Board of Trustees that did not delegate the function and who thus could establish its own standards in passing upon a special exception application, excepting only that they act reasonably (*Matter of Lemir Realty Corp.* v. *Larkin*, 195 N. Y. S. 2d 232, revd. 10 A D 2d 1005, affd. 11 N Y 2d 20). This is in contrast to the instant case, where in addition to acting reasonably the board was obliged to adhere to the announced standards, vague as they are (*Matter of Little* v. *Young*, 299 N. Y. 699). I am unable to ascertain in this record any reasonable basis for the board's action with relation to the special exception application. I believe it was arbitrary and capricious and it should be annulled and the permit granted.