Will Key JEFFERSON and Otto A.
Dale, Appellants,

v.

**CITY OF ANCHORAGE,**
Appellee.

No. 1721.

Supreme Court of Alaska.

Sept. 12, 1973.

Will Key Jefferson, Otto A. Dale, in
pro. per.

Kenneth P. Jacobus, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for
appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

## OPINION

CONNOR, Justice.

In their capacity as taxpayers, appellants brought an action in the superior court through which they sought to have Ordinance 29–70 of the City of Anchorage declared void, and to have any payments disbursed under that ordinance declared illegal. The ordinance in question effected a raise in salary of the mayor of Anchorage from $6,000 to $24,000 annually. From a judgment dismissing the action on its merits, appeal is brought. Appellants' various contentions on appeal may be grouped under three main headings: (1) that Ordinance 29–70 is invalid, (2) that the judgment is invalid, (3) that the attorney's fee awarded to appellee in the sum of $2,000 was excessive.

In 1970, an ordinance was proposed which would provide a higher salary for the mayor than had theretofore been paid. Under the Anchorage Code of Ordinances, such salaries can be changed only during the 30-day period preceding a general election.[1] The ordinance passed on first reading at the council meeting held September 22, 1970. Oral reading of the ordinance was waived by unanimous consent. Ordinance 29–70 provided that the mayor's salary would not be less than $24,000 nor more than $30,000 per year, and that the minimum salary would be set by the City Council at the start of each term and not be diminished during the mayor's term in office.[2]

On September 23, 1970, the ordinance was posted on the City Hall bulletin board, together with a notice typed thereon, which stated that the matter would be considered at a council meeting to be held on September 29, 1970. The notice failed to specify the place of meeting. However, Section 2–27 of the Anchorage Code of Ordinances (hereafter "ACO") establishes the Z. J. Loussac Library building, at 433 F Street, as the place of meeting of the City Council. Council meetings have been held at that location for at least fifteen years.

At the September 29, 1970, council meeting, Ordinance 29–70 was again considered. An amendment was proposed which, in substance, provided that the salary range of $24,000 to $30,000 per year would be applicable only if the mayor elected to serve on a full-time basis, and if he elected to serve other than on a full-time basis, the salary should be in the range of $6,000 to $12,000 per year, with a minimum salary to be established by the council. At this meeting there was considerable discussion among the council members on the advisability of the amendment. The amendment passed by a vote of 8 to 1, and the main motion was declared carried by the same margin. Councilman Peck, at this point, gave notice of reconsideration.

The Ordinance, as passed with the amendment, was duly posted on the City bulletin board, together with a notice that it would be further considered on October 1, 1970, at a special council meeting. Prior to the meeting, extensive discussion took place regarding the mayor's salary in the Anchorage news media. The special council meeting convened at the regular meeting place, and at the appointed time. Ad-

---

1. Anchorage City Ordinance § 2–19 provides:
 "The salaries of the mayor and councilmen shall be fixed by code provision, and when once so fixed may be changed by amendment of such code provision only during the thirty days immediately preceding a general election. Any such salary change shall affect only the councilmen and mayor elected at said general election and at subsequent general elections except when a majority of the council is to be elected at said general election, the council after the election by resolution may extend the provisions of such salary change to all members of the council . . . ."

2. Section 2–44 of the Code of Ordinances, which Ordinance 29–70, as originally worded, proposed to amend, provided: "The salary of the mayor shall be five hundred dollars ($500.-00) per month."

vance notice was given to each councilman and to each of the newspapers of general circulation in the city by delivering copies of the agenda of the meeting to council members and to the newspapers at least six hours prior to the meeting. The agenda again specifically indicated that Ordinance 29–70 would be considered at the meeting.

Councilman Peck withdrew his notice of reconsideration, announcing that he did not wish to reconsider it. Councilman Hartlieb, however, a member of the prevailing side on the September 29, 1970, vote of passage on Ordinance 29–70 then moved that the council reconsider the Ordinance. That motion was seconded by Councilman Campbell, who had also voted on the prevailing side on September 29, 1970. The motion to reconsider was unanimously adopted by all councilmen present. A public hearing on the Ordinance was announced and one person in the audience spoke in opposition to its passage. After the public hearing was closed, the Ordinance was further discussed by the council, after which a vote was taken on the amended Ordinance. The amended Ordinance passed by a vote of 7 to 1, and was thereby enacted.

I

Appellants' claims that the Ordinance was invalid can be summarized as follows:

1. Ordinance 29–70 was not read orally upon its introduction and "first reading". The clerk simply entered the waiver of oral reading in the minutes, but the council members did not actually vote upon the waiver. This violated ACO 2–34.2 which provides in part: "Oral reading of any ordinance may be waived by the *unaniminous* consent of all council present" (Emphasis added), and rendered the Ordinance void.

2. The amendment so changed the original text that it became, in effect, a new and different, ordinance. Because the amended Ordinance went to third reading and final passage on October 1, after having been posted on September 30, it had not been posted at least five days before

final passage as required by ACO 2–34(a), which provides:

"Every ordinance shall be introduced in writing and shall be orally read before any vote for passage thereof is taken. After passage on first reading, the ordinance shall be published by posting a copy thereof on the City Hall bulletin board, together with a notice of the time and place when and where it will be given a public hearing and be° considered for final passage. The first such publication shall be at least five days prior to the time advertised."

3. Under ACO 2–19, the mayor's salary had to be fixed within the 30 days preceding the general election. Ordinance 29–70 provided that the upgraded minimum salary, be fixed by the council "at the start of the mayor's term . . . ." Because the mayor's term did not start until the Monday next following his election, here October 12, 1970, it follows that Ordinance 29–70 violated the provisions of ACO 2–19. Furthermore, on October 12, 1970, the mayor had not indicated whether he would serve on a full or part-time basis.

4. A public hearing on the Ordinance was held on October 1, 1970, with only two days advance notice of the hearing instead of the five days required by ACO 2–34(a). The Ordinance is, therefore, invalid.

■ We will consider these points in the order set forth above. First, it appears from the evidence that oral reading of proposed ordinances has not been practiced in Anchorage for a number of years, it being considered a useless formality. Because ACO 2–34.2 prescribes merely a rule of parliamentary procedure, the council could, by its customary practice, waive the requirement of oral reading. Pasadena v. Paine, 126 Cal.App.2d 93, 271 P.2d 577 (1954); Coleman v. Louison, 296 Mass. 210, 5 N.E.2d 46 (1936).

■ Second, the amendment of the proposed Ordinance did not change its basic character. After amendment, the Ordinance still covered the same subject matter as when it was introduced. There being

no material change in the subject treated in the proposed Ordinance, it was not necessary to proceed as though it was a new one. Gilman v. City of Newark, 73 N.J. Super. 562, 180 A.2d 365 (1962); B & B Vending Co. v. City of El Paso, 408 S.W. 2d 545 (Tex.Civ.App.1966). ACO 2–34(c) provides:

"After such hearing, the council may finally adopt such ordinance with or without amendment. The second passage of any ordinance shall be final and no further passage shall be required."

This provision makes it obvious that an amendment to a proposed ordinance does not require a repetition of procedures. *See also*, Fix v. City of Rochester, 50 Misc.2d 660, 271 N.Y.S.2d 87 (Sup.Ct. 1966).

 Third, changing the manner in which the mayor's salary would be fixed did not violate ACO 2–19. The new Ordinance would simply take precedence over ACO 2–19. There can be no illegality in overriding a legislative provision by legislation of equal dignity and authority.

Fourth, there was in fact more than five days notice before the public hearing on the Ordinance. ACO 2–34(a) merely requires five days public notice between first reading and the time when it will be given a public hearing and be considered for final passage. It is only by treating the amended ordinance as a new ordinance that a non-compliance could be made out. We have already ruled against that contention.

## II

 Appellants contend that the trial court unlawfully delegated to appellees' counsel the task of preparing proposed findings of fact and conclusions of law, and that the judgment is illegal because it was signed in chambers rather than rendered in open court. These points are frivolous.

Civil Rule 78(a) provides:

"Unless otherwise ordered by the court, counsel for the successful party to an ac-

tion or proceeding shall prepare in writing and serve on each of the other parties all findings of fact, conclusions of law, judgments and orders. Counsel for each of the parties so served shall promptly endorse on the original of each document either (1) an approval as to form, (2) a disapproval as to form, or (3) an acknowledgement of the date and hour of service."

Civil Rule 78(b) requires merely that judgments be signed by the court, not that they be rendered in open court.

 Appellants seem to assert that the trial court's findings are contradicted by the record. However, they raised no objection to the proposed findings before their entry, and they have not stated with particularity in what manner the findings are erroneous. We will not, therefore, consider the point further. Parks v. Brown, 368 P.2d 220 (Alaska 1962); Richard v. Richard, 123 Cal.App.2d 900, 267 P.2d 867 (1954). See also, Fairview Public Utility District No. 1 v. City of Anchorage, 368 P.2d 540, 542 (Alaska 1962); Myers v. Sill, 497 P.2d 920, 923 (Alaska 1972).

## III

 The trial court awarded appellee an attorney's fee of $2,000. Appellants complain that the award is excessive inasmuch as this is a case in which a question of public interest was litigated.

Were the arguments for and against the validity of the ordinance fairly evenly balanced, appellants' contentions might have more force. But appellants' case so clearly lacked merit that we cannot agree that the public interest was being vindicated. To the contrary, the public interest hardly is served by forcing a municipality to defend against specious attacks on the propriety of its actions. Nor is that interest served by consuming judicial resources in the processing and disposition of such trifling litigation.

Suffice it to say that this court has previously sustained an award of attorney's

fee to a municipality in a case presenting a public question. Dale v. Greater Anchorage Area Borough, 439 P.2d 790, 793 (Alaska 1968). We find no abuse of discretion by the trial court.

Affirmed.

EDWIN and FITZGERALD, JJ., not participating.