550 P.2d 104

**SUMMIT PROPERTIES, INC., an Arizona Corporation, Appellant,**

**v.**

**Richard F. WILSON and Jean Wilson, husband and wife, Frank Goldtooth, Sr., and Tsinniginnie Singer, as an Individual and for and in behalf of all Navajos similarly situated, and Earl Numkena, as an Individual and for and in behalf of all Hopis similarly situated, Appellees.**

**No. 1 CA–CIV 2640.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 25, 1976.

Rehearing Denied June 30, 1976.
Review Denied Sept. 9, 1976.

Lewis & Roca by John P. Frank, Mary M. Schroeder and Marty Harper and Powers, Boutell, Fannin & Kurn, P.A., by Warren C. Ridge, Phoenix, for appellant.

Mangum, Wall & Stoops by Joyce Mangum and Daniel J. Stoops, Flagstaff, for appellees Wilson.

Ward, Hufford, Blue & Withers by C. Benson Hufford, Flagstaff, for appellees Goldtooth, et al.

## OPINION

HAIRE, Chief Judge, Division 1.

The central question on this appeal is whether a county zoning commission can validly recommend to the County Board of Supervisors zoning ordinance amendments which are substantially different from those originally sought and noticed for hearing, without first giving new notice of the proposed amendments, as changed, and then holding a new hearing *before the Zoning Commission*. The facts pertinent to this question and other issues raised on appeal are as follows.

In 1969 the appellant-defendant Summit Properties sought rezoning of the real property it owned in the Hart Prairie area of Coconino County. The Hart Prairie area is on the slopes of the San Francisco Peaks in Coconino County near Flagstaff. Most of the land in this area is federally owned. Summit's property is adjacent to other private property as well as the federal land. Among the owners of this adjacent private property are the appellee-plaintiffs Dr. and Mrs. Wilson.

Pursuant to Summit's petition for rezoning, the Coconino Planning and Zoning Commission (hereinafter the Commission) on December 12, 1969, published in a daily newspaper notice of a hearing to be held on December 30, 1969. The salient portions of that publication read:

" . . . The rezoning of Snow Bowl Village, TR 1093, from the existing 'A' General Zone to R–1–6,000; C–1–6,000; and R–SD; generally described as being in the area easterly of Hart Prairie Road, approximately five miles northerly of Highway 180. . . . "

Subsequent to the December 30th hearing, which the appellees did not attend, the Commission recommended to the Coconino County Board of Supervisors (hereinafter the Board) zoning classifications R–1–6000, R–M–6000 and C–2. Two of the three recommended classifications differed substantially from those in the published notice relating to the Commission hearing, as is evident from the following explanation of the zoning categories involved. The "R–SD" zoning (the type of zoning advertised), provides that each phase or stage of building proposals are submitted to the planning staff for evaluation and comparison with the original plan before any permits may be granted. Also, any change in density, or re-design of the plan on file with the planning office requires the approval of a use permit. This category of zoning allows the property to be used for single family dwellings, duplexes and multiple dwellings. Uses not shown on the original or approved modified design are prohibited uses.

In comparison, "R–M" zoning (approved by the Commission instead of "R–SD") permits use for single family dwellings, duplexes, multiple dwellings *and office buildings*. Furthermore, through a use permit, motels and hotels, automobile service stations, parking lots and retail commercial

activities and other similar uses may be permitted.

The published notice of the Commission hearing designated "C–1–6000" as the commercial designation. Section 11 permits motels and hotels, hospitals, retail stores, offices and personal service establishments and churches in C–1–6000. In addition, other uses may be permitted through the utilization of a use permit, such as automobile service stations, dance halls, taverns and other establishments selling alcoholic beverages, launderettes and self-service dry cleaners, and off-premises billboards or outdoor advertising displays.

The Commission adopted a "C–2" zone for this area, which permits warehouses, petroleum bulk plants, automobile repair shops, laundries, outdoor sales establishments, public garages, used car sales lots, small manufacturing or fabrication plants, mortuaries and other uses.

After the Board of Supervisors received the Zoning Commission recommendations, notice of a hearing before the Board was published in the January 17, 1970 edition of the Arizona Daily Sun. This notice set forth the zoning classifications recommended by the Commission. Following the hearing, the Board approved the Commission recommended zoning classifications. Neither the Wilsons nor the other appellees were present at either of the hearings. Based upon the zoning approved by the Board, Summit thereafter obtained use permits to operate a golf course, ski lift, and ski runs on the subject property. The Wilsons objected to the issuance of the use permit, and thereafter filed a special action complaint contending that both the zoning amendments and use permits were illegal and void because of lack of proper notice.

*Frank Goldtooth, Sr.,* along with *Tsinniginnie* Singer as individuals and purportedly on behalf of all Navajos similarly situated, and Earl Numkena as an individual and purportedly on behalf of all Hopis similarly situated (collectively referred to as the Native American plaintiffs) also filed a complaint containing allegations similar to those of the Wilsons, and, in addition, alleged that injury had resulted to them because the Hopis and Navajos consider the San Francisco Peaks sacred and use the mountain in various ways consistent with their religious beliefs and way of life. Their complaint related that the Navajos and Hopis often pray to the mountain and that the proposed development of the area would destroy their religious beliefs and way of life which are actively ceremonially, ritually and historically bound to the Peaks. The Native American plaintiffs owned no property located in the vicinity of Summit's land, although the individual Native American plaintiffs were residents of Coconino County, residing near Tuba City, over sixty miles away.

The trial court found for the plaintiffs after all parties presented motions for summary judgment, holding that the notice as originally given for the Zoning Commission to rezone the property to R–1, C–1 and R–SD did not give The Commission jurisdiction to rezone the property to R–1, R–M, and C–2; that this change "was too substantial and too fundamental to be within reach of the notice". With regard to the use permits, the court found that they could not stand because the underlying zoning was illegal and void. Alternatively, the court found that the notice of hearing relating to the use permit had been for a golf course and that the Board of Supervisors had, therefore, improperly considered ski lifts and ski runs.

The original order of the court denied all relief to the Native American plaintiffs. On motion for rehearing, the court reversed itself, and granted relief to them as well.

Summit raises the following arguments in attacking the propriety of the summary judgment: First, there is no constitutional due process requirement for more than one hearing and one notice, and the one hearing and one notice constitutionally required were unquestionably correctly given by the Board of Supervisors on the rezoning hearing before the Board; second, if there was

a defective notice for hearing before *the Commission,* such defect was either cured by the later correct notice given for the hearing before the Board of Supervisors, or such defect was harmless error, or the challenge to the defect was too late to be raised; third, there was no significant defect as to the use permits; fourth, the Native American plaintiffs had no standing to participate in the case.

## COMMISSION'S NOTICE OF RE-ZONING HEARING

■ If we assume that, absent statutory requirements, constitutional due process requires that notice be given and public hearings be held on the essentially legislative task involved in the passage of zoning amendments then we agree with appellant that such *constitutional* due process requirements are fulfilled by due and legal notice of a hearing before the governing body having the actual rezoning power, regardless of any defect in, or lack of notice concerning, preliminary hearing before an advisory commission. *F. P. Plaza, Inc. v. Waite,* 230 Ga. 161, 196 S.E.2d 141 (1973). However, separate and apart from any constitutional due process requirements, the Arizona enabling statutes impose certain notice and hearing requirements for zoning amendments, and the precise question before this Court relates to the effect of the failure to comply with these requirements of the Arizona enabling statutes. A.R.S. § 11–829, which is the enabling statute relating to the amendment of a county zoning ordinance, in part reads:

"A. A person desiring an amendment or change in the zoning ordinance changing the zoning district boundaries within an area previously zoned, shall file a petition in favor of the change . . . . If the petition is for a change of classification, there shall not be counted, either in numbers or area, the owners of land of the same classification as sought by petitioners.

"B. Upon receipt of the petition the board shall submit it to the commission for a report. Prior to reporting to the ·board, the commission shall hold at least one public hearing thereon after giving at least fifteen days notice thereof by one publication in a newspaper of general circulation in the county seat and by posting of the area included in the proposed change.

"C. Upon receipt of the commission's recommendation the board shall hold a public hearing thereon at least fifteen days notice of which shall be given by one publication in a newspaper of general circulation in the county seat and by posting the area included in the proposed change. After holding the hearing the board may adopt the amendment . . ."

■ In *Hart v. Bayless Investment & Trading Company,* 86 Ariz. 379, 346 P.2d 1101 (1959), the Arizona Supreme Court struck down the entire Maricopa County Zoning Ordinance scheme some nine years after its enactment, upon the basis of defective compliance with the notice of hearing provisions in the enabling statutes. The court held that the notice of hearing requirements imposed by the enabling statutes were jurisdictional, and that zoning ordinances adopted without compliance with the enabling act were void. Therefore, in considering the issues presented in this appeal and interpreting the enabling statutes pertaining to enactment of county zoning ordinances, this Court is faced with the issue of exactly what are the jurisdictional subject matter limitations placed upon the Commission when it holds a public hearing concerning a petition to change the zoning in a particular area. Subsection B of § 11–829 is pivotal in resolving this issue. When this subsection is read it is clear that both the requisite notice and hearing must be limited in scope to the proposed changes contained within the landowner's petition. Subsection B, in referring to notice and hearing reads:

"Upon receipt of the petition . . . the commission shall hold at least one

public hearing *thereon* after giving at least fifteen days notice *thereof* . . ." (Emphasis added).

Thus the initial basis of the notice and hearing is the petition. Moreover subsection A indicates the contents of the petition as the change desired by the petitioner:

"A person desiring an amendment or change in the zoning ordinance changing the zoning district boundaries within an area previously zoned, shall file a petition in favor of the change . . . ."

These passages when read together require that the notice and hearing before the Commission be restricted to the changes contained within the petition.

Notwithstanding the foregoing, Summit emphasizes that the Zoning Commission is only an advisory body having no power to actually enact the zoning amendments, and that the statute should be construed to give the Commission authority to make recommendations to the enacting body (here, the Board of Supervisors), which differ from the zoning changes requested by the landowner in his petition. Alternatively, Summit argues that the giving of proper notice of the recommended change concerning the hearing before the Board of Supervisors, cures any defect which might exist by reason of the failure to give new notice and have a new hearing before the Zoning Commission, citing *Vestry Of St. Mark's On The Hill Episcopal Church v. Doub,* 219 Md. 387, 149 A.2d 779 (1959) and *Town Of Burlington v. Dunn,* 318 Mass. 216, 61 N.E.2d 243 (1945).

In view of the jurisdictional principles laid down by the Arizona Supreme Court in *Hart, supra,* and the express requirements of the Arizona enabling statutes, we are not persuaded by Summit's contentions. Admittedly the decision of the Arizona Supreme Court in *Hart* is not directly in point, inasmuch as it involved defective notices as to *both* hearings. However, the principle of requiring strict compliance with the enabling statute is clearly enunciated, and there is nothing in the *Hart*

opinion which would indicate that a different result would have been reached on any facts showing less than strict compliance with all of the notice requirements of the enabling statute. Reduced to its essence, Summit's position is that after hearing a landowner-initiated rezoning petition, the Commission ought to be able to change the requested zoning to that which the Commission deems advisable, and make a recommendation to that effect to the Board of Supervisors without further hearing before the Zoning Commission. In effect, such a recommendation, insofar as it differs from the zoning changes requested and noticed as a result of the landowner's petition, would constitute a Commission proposed zoning amendment. A.R.S. § 11-829D provides as follows:

"D. The planning commission may on its own motion propose an amendment to the zoning ordinance and may, *after holding a public hearing as required by this chapter,* transmit the proposal to the board which shall thereupon proceed as set forth in this chapter for any other amendment." (Emphasis added).

From the foregoing statutory provision it is clear that Commission proposed zoning amendments are subjected to the same notice and hearing requirements as those imposed on landowner-initiated proposals. We do not believe that the Commission should be allowed to indirectly circumvent the notice and hearing requirements of subsection D by making its proposed zoning changes in the form of recommended changes in landowner-initiated proposals. In Arizona, the recommendation of the Zoning Commission forms the jurisdictional basis for any later action by the Board of Supervisors. *Maricopa County Board Of Supervisors v. Bell, 51st Investors,* 108 Ariz. 261, 495 P.2d 1315 (1972). It would therefore follow that this jurisdictional basis must itself be free from jurisdictional defects. In order to assure the Commission's jurisdiction, the notice requirements for a hearing before the Commission cannot, and should not,

be taken lightly. Here, the Commission's recommendations did not comply with the notice requirements of § 11–829. Because of this non-compliance we therefore hold that the Board was without jurisdiction, and the resulting zoning amendment was void.

This holding is not to be considered as precluding all variations absent a second notice and rehearing. Variations from the original notice may be considered where a classification or subject matter either is of a more restrictive nature or is a minor or insubstantial variation from the noticed proposals. *See* authorities cited, 96 A.L.R.2d 484, § 19 (1964).

### LACHES

We also reject appellant's assertion that the doctrine of laches applies to the case at hand. While the surrounding circumstances and merit of a suit must be evaluated in determining the applicability of this concept, *Day v. Wiswall's Estate,* 93 Ariz. 400, 381 P.2d 217 (1963), there must be an unreasonable delay after *knowledge* of the facts which works a hardship. *Maricopa County v. Cities & Towns Of Avondale, Etc.,* 12 Ariz.App. 109, 467 P.2d 949 (1970). 27 Am.Jur.2d Equity, §§ 166, 167. The facts alleged as working the hardship was the expenditure of $500,000 prior to the appellees' filing suit two and one-half years after the rezoning was accomplished. Nowhere do we find facts which indicate that the appellees had either actual or constructive knowledge of the appellant's expenditures. Therefore the affirmative defense of laches was properly rejected by the trial court.

### USE PERMITS

As mentioned earlier, Summit Properties had received use permits for golf courses, ski runs, and a ski lift. The lower court ruled that the use permits were invalid for two reasons—first, because the underlying ordinance was invalid, and, second because the Board's published notice mentioned only a golf course while following the hearing, the Board approved additional uses. Inasmuch as we have upheld the lower court's holding regarding the invalidity of the underlying ordinance, we need not consider the alternative basis of invalidity.

### STANDING OF NATIVE AMERICAN PLAINTIFFS

Separate and apart from any issues urged regarding the Wilson appellees and the validity of the zoning amendments and use permits, Summit has raised in its opening brief the additional issue of whether the Native American plaintiffs had standing to justify the consideration of their complaint by the trial court. The answering brief filed in this Court contained a response on the standing question on behalf of the Native American plaintiffs. While this standing issue might not be considered of great importance in view of our holding affirming the invalidity of the zoning amendments, the Court was nevertheless prepared to proceed with a consideration and determination thereof, in view of the possibility of future zoning amendments and the raising of similar questions. However, in the process of reviewing the record, we have noticed that Summit's notice of appeal and cost bond in support thereof filed subsequent to the filing of the trial court's formal written judgment, does not purport to appeal from the judgment entered in favor of the Native American plaintiffs. Under these circumstances, it is the opinion of the Court that in this appeal it lacks jurisdiction over the Native American plaintiffs. Therefore the standing issue will not be decided.

The trial court's judgment in favor of the Wilsons is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.