Janice CHILTON–WREN, Petitioner,

v.

Wallace R. OLDS, Respondent.

No. S–8476.

Supreme Court of Alaska.

May 5, 2000.

Robert K. Hickerson, James J. Davis, Jr., Mark Regan, Alaska Legal Services Corporation, Juneau, and Judith R.T. O'Kelley, Jones, Day, Reavis and Pogue, Atlanta, Georgia, for Petitioner.

Anthony M. Sholty, Faulkner Banfield, Juneau, for Respondent.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

### OPINION

MATTHEWS, Chief Justice.

## I. *INTRODUCTION*

A landlord, Wallace Olds, brought a forcible entry and detainer (FED) action against his tenant, Janice Chilton–Wren, seeking eviction on the basis of non-payment of rent. Chilton–Wren asserted several affirmative defenses and counterclaims. After prevailing in the FED action, Chilton–Wren requested a jury trial on the counterclaims. The district court granted summary judgment to Olds, holding that Chilton–Wren had waived her right to a jury trial and that she was collaterally estopped from pursuing the claims because they had been decided in the FED action. The superior court affirmed, and Chilton–Wren petitions for review to this court.

Because the doctrine of collateral estoppel was improperly applied in this case, and because FED actions should be restricted to the issue of possession, we reverse and remand the case for trial on Chilton–Wren's counterclaims.

## II. FACTS AND PROCEEDINGS

### A. Facts

In January 1996 Janice Chilton–Wren rented an apartment in Juneau from Wallace Olds for a rental fee of $950 per month. On the same day the parties signed the lease, the Tlingit and Haida Central Council issued a check for $2,438.72 to Olds, with the description "RENT JANICE CHILTON" and the notation "1ST/LAST/DEPOSIT."

The landlord-tenant relationship between the parties had a number of problems, and on March 1, 1996, Chilton–Wren informed Olds in writing that she would be moving out of the apartment at the end of the month. In this letter, Chilton–Wren requested that "the monies given for 'last' months [sic] rent" be applied to the March rent. Chilton–Wren was apparently referring to the check written by the Tlingit and Haida Central Council. On March 4 Olds served Chilton–Wren with a notice to quit for non-payment of rent. In response to Chilton–Wren's request that the Tlingit and Haida money be applied to the last month's rent, Olds characterized the funds as a "security and damage deposit" which could not be credited toward the owed rent. Chilton–Wren did not pay the amount demanded, and on March 14 Olds filed a complaint in the district court instituting an FED action against Chilton–Wren.

### B. Proceedings

#### 1. The FED hearing

A hearing was scheduled for March 19 in the FED action, but was postponed until March 27. On March 25 Chilton–Wren filed an answer listing five "Counterclaims and Affirmative Defenses" based on Olds's alleged breach of the rental contract and the Uniform Residential Landlord Tenant Act (URLTA). For each counterclaim she requested the relief of damages and/or a rent abatement. At the same time, she filed a jury demand, requesting that all of her counterclaims be heard by a jury.

At the FED hearing on March 27, Olds asserted that Chilton–Wren failed to pay the rent due for March and should therefore be evicted. In response, Chilton–Wren argued her affirmative defenses. First, she claimed that she had paid the March rent, as the Tlingit and Haida payment to Olds had included last month's rent. Alternatively, she claimed that no rent was due for March because Olds had illegally entered her apartment on several occasions in violation of AS 34.03.140. The statutory penalty under AS 34.03.300(b) would therefore offset any rent obligation. She further claimed that Olds had violated his statutory obligations to provide heat and hot water and to maintain safe and habitable premises and that these violations decreased the rental value of the apartment by an amount greater than or equal to her rental obligation. Finally, she claimed retaliatory eviction. Chilton–Wren presented six witnesses in support of these defenses.

During the hearing, the district court twice raised the question of whether Chilton–Wren's counterclaims should be considered in the context of the FED hearing. The first time, the court asked Olds's attorney whether it would be necessary to address Chilton–Wren's counterclaims. Olds's attorney responded that the claims should be addressed to the extent necessary to resolve whether Chilton–Wren owed Olds rent for March. The second time, the court asked Chilton–Wren's attorney whether he had waived Chilton–Wren's jury demand on the counterclaims "for the purposes of this proceeding on the FED matter." Chilton–Wren's attorney responded that he did not waive a jury for the counterclaims and that he was raising the counterclaims at the FED hearing solely for the purpose of rent abatement.

The district court issued a memorandum decision and order the day after the FED hearing. The court found that the Tlingit and Haida check to Olds included the last month's rent. The court also found that Olds had illegally entered Chilton–Wren's apartment in violation of AS 34.03.140, and that Chilton–Wren was therefore entitled to recover one month's rent in damages under AS 34.03.300(b). The court apparently used these two findings to offset the March rent and preserve the deposit in full. The court found that the proof was insufficient to support the affirmative defense of retaliatory eviction. Finally, the court found that, although Olds had violated AS 34.03.180 by

failing to supply heat and hot water and AS 34.03.100 by failing to maintain safe and habitable premises, Chilton–Wren had presented insufficient evidence to enable the court to determine the amount of damages. In evaluating Chilton–Wren's damages claims, the court applied the standard that the evidence must "afford a sufficient basis for the trier of fact to calculate, with reasonable certainty, the amount of loss caused by the opposing party's breach."

Having held that Chilton–Wren was entitled to an offset in the amount of the March rent and to the refund of her deposit in full, the court entered judgment "for the tenant in the action for possession."

Olds's motion for reconsideration was denied.

### 2. *Chilton–Wren's counterclaims*

Two days after the FED hearing, Chilton–Wren filed an "Answer, Amended Counterclaims, and Affirmative Defenses," in which she added a claim for civil rights violations to the five counterclaims she had alleged in the original answer. Olds filed his answer to Chilton's counterclaims, and the court set the trial date for November 4, 1996.

On June 25, 1996, Olds moved for summary judgment. The district court granted the motion as to the original five counterclaims, finding that Chilton–Wren had waived her right to a jury trial by proceeding on her claims at the eviction hearing and that she was collaterally estopped from asserting the former counterclaims by the decision in the FED proceeding.

### 3. *The superior court decision*

Chilton–Wren appealed the summary judgment to the superior court, which affirmed. The superior court expressed concern that the case "present[ed] a difficult setting for the application of the doctrine of collateral estoppel" because of the tension between the purposes of FED proceedings and the URLTA, but concluded that the alternative to collateral estoppel would be a "procedural morass."

### III. *STANDARD OF REVIEW*

The applicability of collateral estoppel to a particular set of facts is a question of law.[1] We review such questions of law using our independent judgment.[2] In reviewing a grant of summary judgment, we will draw all reasonable inferences of fact in favor of the party against whom judgment was granted.[3]

### IV. *DISCUSSION*

#### A. *Did Chilton–Wren Waive Her Right to a Jury Trial on Her Counterclaims?*

The Alaska Constitution provides the right to a jury trial on claims exceeding $250.[4] Chilton–Wren made a timely jury demand, and Olds does not contest her right to have her claims heard by a jury. Instead, he argues that she waived this right by electing to try her claims at the FED hearing.

Alaska law is clear regarding the importance of the right to a jury trial. Civil Rule 38(a) declares that "[t]he right of trial by jury ... shall be preserved to the parties inviolate." This right will not be deemed waived (outside of the exceptions in Rule 38(d)) unless the waiver is explicit, or illustrated by actions "so inconsistent with [an] intent to enforce the right in question" as to indicate that the right has been waived.[5] The proper inquiry is whether "the party's *prior notice* of the consequences of his action ... justifies the court in finding a waiver."[6]

Olds argues, and the district court found, that Chilton–Wren waived her right to

---

**1.** See *Sopcak v. Northern Mountain Helicopter Servs.*, 924 P.2d 1006, 1008 (Alaska 1996) (citing *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 950 (Alaska 1995)).

**2.** *See id.*

**3.** See *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990) (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1281 (Alaska 1985)).

**4.** Alaska Const. art. I, § 16.

**5.** *Frank v. Golden Valley Elec. Ass'n*, 748 P.2d 752, 754–55 (Alaska 1988).

**6.** *Id.* at 755 (emphasis in original).

a jury trial by raising the counterclaims in the FED proceeding—a proceeding in which there is no jury.[7] A review of the proceedings, however, leaves no doubt that Chilton–Wren was *not* on notice that raising the counterclaims would waive her right to a jury trial.

All of the participants in the FED hearing appeared to believe that Chilton–Wren could raise the claims both as defenses at the FED hearing for possession and as subsequent counterclaims for damages. The trial judge asked Olds's attorney whether the counterclaims should be discussed at the FED hearing, and the attorney replied that they should be discussed to the extent necessary to determine whether rent was due. The trial judge later had the following exchange with Chilton–Wren's attorney:

> COURT: I'm assuming since we proceeded today that notwithstanding the fact counsel asked for a jury demand on counterclaims and claims, that that's been waived *for purposes of this proceeding on the FED matter.*
>
> COUNSEL: I'm not sure how the statute as to rent abatement for counterclaims interact. *We don't want to waive a jury for counterclaims.* Under the statute, it appears the court looks at counterclaims and abates rent as the court decides. In so far as we want to maintain jury for counterclaims but in support of court looking at counterclaims for rent abatement, that's what I meant to raise for purposes of the FED.
>
> COURT: Okay, so *we don't have a problem about a jury trial on the issue of the FED proceeding* and that's what we're here for. (Emphasis added).

This exchange reveals that Chilton–Wren believed she had explicitly reserved her right to a later jury trial on the counterclaims. Indeed, the exchange indicates that the judge was merely asking whether Chilton–Wren thought her jury demand applied to the FED

hearing. When she responded that she thought the court could look at her counterclaims for the purpose of rent abatement (an affirmative defense in an action for possession), the court was satisfied.

Thus, Chilton–Wren did not receive adequate notice that by raising affirmative defenses to the eviction action she would waive a jury trial on the merits of her damages claims. She therefore did not waive her constitutional right to a jury trial.

### B. Is Chilton–Wren Barred by the Doctrine of Collateral Estoppel from Asserting Her Counterclaims in a Proceeding Subsequent to the Forcible Entry and Detainer Action?

■ Both the district court and the superior court held that the judgment in the FED action collaterally estopped Chilton–Wren from bringing her counterclaims to trial. Collateral estoppel, or issue preclusion, applies if four conditions are met:

> [T]he party against whom preclusion would work must have been a party, or in privity with a party, to the first action; the issue to be precluded from relitigation must be identical to the issue decided in the first action; the first action must have resolved the issue by final judgment on the merits; and the determination of the issue must have been essential to the final judgment.[8]

In addition to these four conditions, the issue to be collaterally estopped must have been "actually and fully litigated in the first action." [9] In other words, the precluded party must have had "a fair opportunity procedurally, substantively, and evidentially to contest the issue." [10]

■ Although Chilton–Wren was a party to the FED hearing which was resolved by a final judgment in her favor, her asserted claims for relief were not identical to the issues raised in the FED hearing; nor were

---

7. *See Vinson v. Hamilton,* 854 P.2d 733, 737 (Alaska 1993) ("[T]he parties in an FED hearing do not have a right to a jury trial.").

8. *Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991) (citations omitted).

9. *Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987).

10. *Id.* at 1154 (internal quotations omitted).

they essential to the final judgment. The FED hearing dealt exclusively with the question of possession.[11] Chilton–Wren's purpose in raising the counterclaims in the FED hearing was to determine whether there was sufficient evidence to show that her damages claims were at least as valuable as one month's rent and that she was therefore entitled to retain possession. The court was not required, therefore, to decide whether Chilton–Wren's counterclaims might amount to damages in excess of her one month's rent. This question was expressly reserved for a jury trial at a later date.

 In *Vinson v. Hamilton*, we held that a tenant has the right to raise defenses under the URLTA in an FED hearing.[12] However, we held that the right to these defenses does not mean that the tenant has the right to a jury trial in the FED action, because "the central issue of the case is still possession, for possession, not money damages, is what the landlord seeks, and a tenant has the alternative of pursuing her counterclaims in a separate judicial proceeding."[13] This does not mean, however, that a tenant necessarily waives her right to a jury trial by including counterclaims in her defense to the FED action. A tenant should not be forced to choose between being evicted from her home but preserving her right to seek monetary damages or retaining possession of her home but forfeiting recovery of her damages claims.

 FED hearings exist to protect a landlord's right to possession and to prevent the use of self-help. They are designed to be uniquely expedited processes that ensure a fair hearing on the issue of possession. But they often lack many of the procedural aspects, such as the right to a jury, discovery,

preparation time, and procedural continuances, that are needed for a "full and fair" trial on issues other than possession.[14] The parties can choose to agree, with the court's approval, to modify the expeditious and summary nature of the FED action in order to fully and fairly litigate the tenant's counterclaims. If they do so, the litigation will have collateral effect. However, barring such a court-approved agreement, the proper approach is to bifurcate the trials—litigating the counterclaims in the FED action only to the extent necessary to determine the question of possession and preserving the damages issues for a later jury trial.[15]

 Thus, regardless of the outcome of the FED action and the determinations made by the FED judge, a tenant should have the right to a full and fair litigation of his or her damages claims before a jury. Absent an express waiver of the right to a jury trial or a court-approved agreement between the parties to change the streamlined nature of the FED action, collateral estoppel should not apply to these types of counterclaims. The tenant should therefore be free to litigate these claims anew in a separate action before a jury.

## V. CONCLUSION

 The doctrine of collateral estoppel does not prevent Chilton–Wren from litigating her claims for money damages because the issues are neither identical to those in the FED action nor necessary to the resolution of the FED action. In addition, the summary process of an FED action does not afford a tenant a full and fair opportunity to litigate damages claims. Because collateral estoppel does not apply, and because Chilton–Wren did not waive her right to a jury

11. *See* AS 34.03.190(a)(1).

12. 854 P.2d 733, 736 (Alaska 1993).

13. *Id.* at 738 & n. 11 ("Notably, AS 34.03.190(a) does not *require* tenants to pursue counterclaims by way of an FED hearing." (emphasis in original)).

14. *Cf. Kopanuk v. AVCP Reg'l Hous. Auth.*, 902 P.2d 813, 816 n. 1 (Alaska 1995) ("Although an FED action may result in equitable relief, it is a swift and summary process. FED actions are

unsuited for resolution of more complex inquiries. . . .").

15. This is the approach adopted by the Hawaii Supreme Court in *Lum v. Sun*, 70 Haw. 288, 769 P.2d 1091, 1097 (1989) (interpreting a rule identical to our Civil Rule 38(b) to mean that if a tenant asserts counterclaims in an FED action, the court severs the counterclaims for trial by jury and proceeds with summary process on the issue of possession).

trial, we REVERSE and REMAND this case for trial on the counterclaims.

CARPENETI, Justice, not participating.