Frank S. GRISWOLD, Appellant,

v.

CITY OF HOMER, Appellee.

No. S–9627.

Supreme Court of Alaska.

Nov. 16, 2001.

William R. De Vries, Homer, for Appellant.

Gordon J. Tans, Perkins Coie, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. *INTRODUCTION*

Frank S. Griswold challenges a city ordinance permitting automobile-related uses in Homer's central business district. Griswold alleges that the ordinance amounts to spot zoning, that proper procedures were not followed in passing the ordinance, and that disqualifying conflicts of interest exist. The superior court dismissed all of Griswold's claims on summary judgment. Because Griswold has failed to establish a material difference between this case and our decision in *Griswold v. City of Homer (Griswold I )*,[1] we hold that *Griswold I* is controlling precedent. We also hold that the superior court properly dismissed Griswold's procedural and conflict of interest claims. Therefore, we affirm the decision of the superior court.

### II. *FACTS AND PROCEEDINGS*

The Homer Zoning Ordinance, originally enacted in 1983 and amended in 1989, disallowed car lots and automobile-related services throughout Homer's central business district (CBD).[2] Pre-existing uses in violation of this restriction were allowed as "grandfathered" nonconforming uses.[3]

#### A. *Ordinance 92–18—Griswold I*

In 1990 local businessman Guy Rosi, Sr. requested that the Homer City Council amend the zoning laws to permit automobile-related activities in the CBD. In 1991 he alternatively requested that his lot be rezoned to permit automobile sales and related services. Rosi operated an automotive repair business within the CBD that was a grandfathered nonconforming use, while the automobile sales business that he had previously operated on the same lot was not permitted because it had been discontinued for more than one year.

After public hearings regarding automobile-related services in the CBD and a favorable recommendation from the planning commission, the city council adopted Ordinance 92–18, which amended the city code to allow certain automobile-related businesses in a thirteen-lot section of the CBD that included Rosi's property. It added the following as a permitted use:

> hh. Automobile and vehicle repair, vehicle maintenance, public garage, and motor vehicle sales, showrooms and sales lots, but only on Main Street from Pioneer Avenue to the Homer Bypass Road, excluding corner lots with frontage on Pioneer Avenue or the Homer Bypass Road, be allowed as a permitted use.

The city council voted unanimously to pass the ordinance. One participating council member, Brian Sweiven, owned one of the thirteen lots covered by the amendment.

Frank Griswold lives in the CBD and owns an automobile repair business there that has been grandfathered as a nonconforming use. Griswold challenged the validity of the ordinance, claiming that a conflict of interest existed with regard to Sweiven and that the ordinance amounted to illegal spot zoning for the benefit of landowner Rosi. After a bench trial, the superior court rejected Griswold's claims, and an appeal followed.

In *Griswold I*,[4] we affirmed the validity of the ordinance on zoning law grounds. After an extensive consideration of the legal merits of Griswold's claims, we affirmed the findings of the superior court that the ordinance did not amount to spot zoning. Specifically, we held that it was not error to find that the change was consistent with the city's comprehensive plan, was enacted to serve the general interests of the community, and was supported by legitimate, nondiscriminatory justifications.[5] However, we did rule that a conflict of interest existed with regard to council member Sweiven.[6] The case was remanded to the superior court with instruc-

---

**1.** 925 P.2d 1015 (Alaska 1996).

**2.** *See id.* at 1017.

**3.** *See* HCC 21.64.010.

**4.** 925 P.2d 1015 (Alaska 1996).

**5.** *See id.* at 1020–25.

**6.** *See id.* at 1027.

tions to consider whether the ordinance should be invalidated.[7]

The superior court entered judgment declaring the ordinance invalid on July 27, 1997. In response, the city council officially repealed Ordinance 92–18 via Ordinance 97–10.

### B. *Ordinance 98–9(A)*

In November 1997 a new ordinance proposing changes to the zoning laws identical to those contained in Ordinance 92–18 was introduced to the city council to address the "same public welfare issues and concerns" as the invalidated ordinance.[8] The city council referred the new ordinance, identified as Ordinance 98–9, to the planning commission as required under the Homer City Code.

The planning commission held a public hearing on the proposed ordinance on March 18, 1998, and returned the proposed ordinance to the council with a recommendation that it not be adopted.

The city council gave Ordinance 98–9 a first reading at its May 11, 1998 meeting. The council then held its own public hearing on the proposed ordinance. At a second reading, on June 22, 1998, the city council amended the proposed ordinance to require that visibility screening fences be erected around any automobile parts, automobiles in disrepair, or automobiles awaiting repair or customer pickup. The amended proposal was renamed Ordinance 98–9(A).

The first sentence of the amendment in Ordinance 98–9(A) is almost identical to the complete language of the amendment in Ordinance 92–18.[9] The only significant difference between the two ordinances is the additional fencing language in Ordinance 98–9(A), which provides:

Vehicles awaiting repair or service; inoperable vehicles; vehicles for parts, and vehicles awaiting customer pickup shall be parked inside a fenced enclosure so as to be concealed from view, on all sides. The fence shall be a minimum height of 8' and so constructed to prohibit visibility of anything inside of the enclosure. The portion of any vehicle exceeding 8' in height shall be permitted to be visible outside of the fence. Vehicle parts (usable or unusable), vehicle service supplies, and any other debris created in the repair or servicing of vehicles shall also be stored inside the fenced enclosure out of view of the public.

The city council passed Ordinance 98–9(A) at the same meeting at which it was amended.

Griswold filed this suit in superior court to have Ordinance 98–9(A) declared invalid. He argued that the ordinance amounts to illegal spot zoning because, in part, it was enacted as the result of prejudice and arbitrary decision-making, has no legitimate public purpose, and does not comply with the comprehensive plan for the city of Homer. He also alleged that two council members had a disqualifying conflict of interest and should not have participated in discussions nor voted on the ordinance. Finally, he argued that amending the ordinance after the public hearing and consideration by the planning commission violated procedural requirements.

On November 29, 1999, the superior court granted partial summary judgment to the city on Griswold's procedural and spot zoning claims, leaving only Griswold's conflict of interest claims. The court ruled that the spot zoning claims were precluded by this court's decision in *Griswold I*, and that the procedural claims should be dismissed because the amendments did not so alter the ordinance as to require resubmission to the planning commission. On January 23, 2000, the court granted summary judgment against Griswold on the conflict of interest issue because his claim, even accepted as true, did not amount to a conflict of interest. Final judgment against Griswold was entered on February 25, 2000.

---

7. *See id.* at 1030.

8. Council member Sweiven, whose conflict of interest led to the invalidation of the ordinance in *Griswold I*, was not on the city council at this time.

9. Ordinance 92–18 refers to Alaska Highway 1 as "the Homer Bypass Road," whereas Ordinance 98–9(A) refers to the highway as "the Sterling Highway."

Griswold appeals the decision of the superior court, arguing that: (1) the superior court improperly applied collateral estoppel to preclude his contention that Ordinance 98–9(A) amounts to spot zoning,[10] (2) the superior court erred in finding that the fencing amendment did not require resubmission of the ordinance to the planning commission, and (3) the superior court erred in finding that Council Member Al Waddell did not have a conflict of interest.[11]

### III. *STANDARD OF REVIEW*

■ "The applicability of collateral estoppel to a particular set of facts is a question of law."[12] We "review such questions of law using our independent judgment."[13]

We use our independent judgment to review grants of summary judgment.[14] We "will affirm a grant of summary judgment if the evidence in the record, viewed in the light most favorable to the non-moving party, fails to disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[15] We may affirm a grant of summary judgment on any basis appearing in the record.[16]

### IV. *DISCUSSION*

A. *The Superior Court Properly Dismissed Griswold's Spot Zoning Claims on Summary Judgment.*

■ The superior court granted the city's request for summary judgment on Griswold's claim that Ordinance 98–9(A) amounted to impermissible spot zoning. The superior court found that Griswold's claims were satisfactorily determined in *Griswold I* and should not be relitigated.

■ The doctrine of collateral estoppel, also called issue preclusion, "bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding."[17] The dual purposes of the doctrine are to protect litigants from "the burden of relitigating an identical issue with the same party or his privy and ... [to] promot[e] judicial economy by preventing needless litigation."[18]

Griswold contends that collateral estoppel does not apply to his claims in this case for three reasons: (1) the issues here are not identical to those in *Griswold I,* (2) there was no final judgment averse to his position in the previous case, and (3) the circumstances surrounding the zoning decision have changed so significantly as to permit relitigation of the issues.

However, we need not reach the question of whether the issues are "identical" as required by collateral estoppel in order to affirm the decision of the superior court. Even if his claim is not precluded, Griswold must show that this case is not settled by the application of *Griswold I* as controlling legal precedent. Whether there are factual differences that avoid the preclusive effect of *Griswold I* or whether there are material differences that avoid application of the legal rule of *Griswold I* on summary judgment are two

---

**10.** Although Griswold lists his complaints about the council's improper purpose as four different issues in this appeal (improper motive, primary purpose to assist Rosi, spot zoning, and no legitimate public purpose), his charges all revolve around the requirements for a claim of spot zoning. Since each of those four issues was also considered in *Griswold I* and may be precluded by that decision, they will be considered together for purposes of this appeal.

**11.** Griswold's initial complaint claimed that both Waddell and Council Member Dennis Leach had disqualifying conflicts of interest, but he does not raise the argument with respect to Leach in this appeal.

**12.** *Chilton–Wren v. Olds,* 1 P.3d 693, 696 (Alaska 2000).

**13.** *Id.*

**14.** *See DeNardo v. GCI Communication Corp.,* 983 P.2d 1288, 1289 (Alaska 1999).

**15.** *Id.* at 1289–90 (quoting *Baxley v. State,* 958 P.2d 422, 428 (Alaska 1998)).

**16.** *See id.* at 1290.

**17.** *Campion v. State,* 876 P.2d 1096, 1098 (Alaska 1994) (internal quotation marks omitted).

**18.** *Id.* (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

questions that proceed under similar analyses.

In *Griswold I,* we considered the inclusion of automobile-related businesses in Homer's CBD under three aspects of a spot zoning claim. We noted that "it is the role of elected representatives rather than the courts to decide whether a particular statute or ordinance is a wise one." [19] The deference shown to such an ordinance meant that:

> [t]he party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.[20]

In light of this standard, we concluded that sufficient public policy reasons existed to conclude that Ordinance 92–18 did not amount to spot zoning.

Specifically, we held that, first, the amendment could be understood as consistent with the comprehensive plan's intent to limit the CBD to commercial and business activities.[21] Second, we held that in addition to benefitting Rosi, the amendment could be understood as benefitting the community by advancing legitimate legislative goals, including: regulating the density of population, stabilizing land values, and promoting health, safety, and welfare.[22] Finally, we held that the size of the area rezoned was not so small as to direct a finding that the amendment was spot zoning.[23]

Griswold's claims do not present changes significant enough to avoid application of the precedent established in *Griswold I.* Griswold claims that land use in the CBD has changed so significantly that the decision in *Griswold I* does not apply. However, reconsideration of a previous zoning decision generally requires either that other zoning classifications in the area have changed or use has changed to the point that the character of the area is completely different.[24] The laundry list of minor changes that Griswold presents in this case evidences only a more intensified version of the same land use.

Griswold also alleges that the fencing requirement added to the amendment makes the issue in this case different. We have recognized the "classic" definition of spot zoning as "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." [25] The addition of the fencing requirement does not change the ordinance in a way that suggests spot zoning under this definition—there is no change in the parcel of land affected, no change in the differing use classification, and no change in the allegedly-benefitted owner. As a result, the fencing requirement does not create a material difference.

Finally, Griswold argues that the fact that the planning commission gave its approval to the amendment in *Griswold I,* but did not do so here, is a relevant change. However, the city council is not bound in any way by the planning commission's recommendation. Therefore, whether the planning commission approved of the change does not create a material difference in the question whether the challenged amendment was spot zoning.

Griswold fails to present a material difference between this case and the clearly established legal precedent of *Griswold I.* As a result, our holding that such an ordinance has sufficient public policy basis for legitima-

---

19. *Griswold I,* 925 P.2d 1015, 1019 (Alaska 1996).

20. *Id.* (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974)).

21. *See id.* at 1021.

22. *See id.* at 1023–24.

23. *See id.* at 1024–25.

24. *See Burke v. Village of Glenview,* 257 Ill. App.3d 63, 195 Ill.Dec. 1, 628 N.E.2d 465, 469 (1993); 4 Edward H. Ziegler Jr., *Rathkoph's The Law of Zoning and Planning* § 48.06 (West 4th ed.1997).

25. *Griswold I,* 925 P.2d at 1020 (interior quotation marks omitted).

cy is conclusive of the question presented in this case. Therefore, we affirm the decision of the superior court without reaching the specific question of whether collateral estoppel was appropriate in this case.

B. *The Superior Court Properly Found that Ordinance 98–9(A) Did Not Require Review by the Planning Commission Subsequent to Amendment.*

■ Griswold argues that the ordinance should have been resubmitted to the planning commission after it was amended by adding the fencing requirement. The superior court found that the change did not sufficiently alter the substance of the ordinance to require resubmission.

The Homer City Code specifically outlines the procedures to be followed by the city council in amending zoning ordinances.[26] The city code generally requires that public hearings be held and that the planning commission provide a written recommendation on any proposed zoning amendment.[27] Although the council is not bound by opinions expressed at public hearings or by the planning commission, submission of proposals to that process is required. Neither party contends that Ordinance 98–9 was not initially submitted under the proper procedures; the only question is whether the subsequent amendment requires the amended ordinance, Ordinance 98–9(A), to begin that procedure again.

In similar circumstances, we have held that amended ordinances must be resubmitted only if the amendment results in a material change to the subject covered by the ordinance. In *Liberati v. Bristol Bay Borough*,[28] a proposed ordinance imposed a tax to be paid by all purchasers of red salmon and red salmon eggs caught within the borough. Immediately before passage, the ordinance was amended to include all raw fish and to make it clear that the seller did not have the burden of collecting or accounting for the tax. We ruled that amendments must be "so substantial as to change [the] basic character" of the ordinance in order to require the process to be repeated, and that the immediate case fell "far short of that standard." [29]

Similarly, in *Jefferson v. City of Anchorage*,[30] a proposed ordinance to increase the annual salary of the mayor from $6,000 to $24,000 was amended to provide that the increase would be considerably less if the mayor chose to serve on a part-time basis.[31] An Anchorage ordinance required that the proposed ordinance be posted five days prior to final passage. Although the original form of the ordinance was published eight days before final passage, the amended version was only published two days before final passage. Despite the change, we held that when there is "no material change in the subject treated in the proposed ordinance, it was not necessary to proceed as though it

---

**26.** The code is in accord with state statutes, which require that such zoning changes be made by ordinance and outline how an ordinance should be passed. *See* AS 29.25.010; AS 29.25.020.

**27.** HCC 21.70.020 provides:
Amendment Procedure.
a. Any valid request by an individual to initiate a zoning ordinance amendment shall be submitted to the City Manager.
b. Zoning amendments requested by the City Council shall be introduced at any regular or special meeting of the Council.
c. In each instance, the City Manager shall immediately forward the request to the City Planning Director. The Planning Director shall arrange notice and schedule public hearings as follows:
1. A public hearing shall be held by the Homer Advisory Planning Commission on the proposed amendment in accordance

with Chapter 21.69 of this title. After the public hearing, the Homer Advisory Planning Commission shall send its written recommendations to the City Council along with all certified copies of minutes and public records relating to the proposed amendment.
2. The City Council, in accordance with ordinance enactment procedures of the Homer City Code, may or may not adopt the amendment as a City ordinance.

**28.** 584 P.2d 1115 (Alaska 1978).

**29.** *Id.* at 1119.

**30.** 513 P.2d 1099 (Alaska 1973).

**31.** *Id.* at 1100.

was a new one." [32]

Griswold argues that changes to a zoning ordinance are different because of the requirement that such changes be submitted to a planning commission. He relies upon cases from other jurisdictions to support this difference. For example, in *Colorado Leisure Products, Inc. v. Johnson*,[33] a county commission was presented with a recommendation from the planning commission that 80 acres of a 160–acre parcel be rezoned. The county commission amended the proposal to rezone the entire 160 acres. The court held that the zoning action was void because the county commission acted "without having the benefit of the planning commission's input and expertise." [34]

Similarly, in *Maricopa County Board of Supervisors v. Bell 51st Investors*,[35] the Arizona court invalidated a zoning amendment made by the county board of supervisors. In that case the local zoning commission recommended rezoning one square mile in a two square mile tract of land. The board of supervisors amended the proposal to include the entire two square miles and passed the ordinance. The court held that the board of supervisors could not "initiate its own zoning changes without first obtaining the views of the Planning and Zoning Commission." [36]

The city distinguishes these cases on the ground that the amended ordinance involved additional land that was not covered by the original. The city points to another Arizona case in which an appellate court noted that the requirement of resubmission to a zoning commission after amendment is not absolute.[37] "Variations from the original notice may be considered where a classification or subject matter either is of a more restrictive nature or is a minor or insubstantial variation from the noticed proposals." [38] Other cases have supported the idea that amendments to zoning proposals do not need to be resubmitted if the changes are minor.[39]

The amendment inserted in the current case is both minor and of a more restrictive nature than the original proposal. It does not alter the subject matter of the ordinance, and it does not alter the amount of land affected or the permitted use classification. It merely provides a condition upon a certain form of use. In addition, the amendment has the effect of narrowing the zoning change. The city is correct that requiring resubmission after minor, narrowing changes like the one involved in this case would so encumber the process as to discourage effective and proper amendment by the council.

In addition, as we noted in *Liberati*,[40] amendment by the council is provided for in state statutes, which provide that after public hearings, the city council can "adopt [an ordinance] with or without amendment." [41] Although cases involving amendments to zoning ordinances may deserve greater scrutiny, we hold that the amendment considered here is such a minor change that it does not require resubmission.

C. *No Actionable Conflict of Interest Exists with Regard to Council Member Waddell.*

■ Griswold argues that council member Al Waddell should not have participated in the consideration or vote on Ordinance 98 9(A) because of a conflict of interest. The superior court granted the city's motion for summary judgment on this claim.

Alaska state law directs municipalities to adopt a conflict of interest ordinance that

---

32. *Id.* at 1102.

33. 187 Colo. 443, 532 P.2d 742 (1975).

34. *Id.* at 745.

35. 108 Ariz. 261, 495 P.2d 1315 (1972).

36. *Id.* at 1318.

37. *Summit Properties, Inc. v. Wilson*, 26 Ariz. App. 550, 550 P.2d 104, 109 (1976).

38. *Id.*

39. *See, e.g., Westland West Community Ass'n v. Knox County*, 948 S.W.2d 281, 283 (Tenn.1997) ("If the revision is inconsequential and would not have altered the [regional planning commission]'s recommendation, resubmission is not mandated.").

40. *See Liberati*, 584 P.2d 1115, 1119 (Alaska 1978).

41. AS 29.25.020(b)(6); *see also* HCC 01.08.020.

requires members of a governing body to disclose when they have a "substantial financial interest" in an official action.[42] The city of Homer's conflict of interest provisions state that a "substantial financial interest" means "a financial interest that could be affected by an official action, which might reasonably result in a pecuniary gain or loss exceeding $300."[43] Whether such an interest exists and requires an excuse from voting are questions to be determined by the mayor,[44] whose decision can be overridden by a majority of the city council.[45]

Griswold argues that there are two grounds on which Waddell has a substantial financial interest in the passage of Ordinance 98–9(A). First, he claims that Waddell intends to initiate automobile-related businesses on property that he owns within the CBD, but not in the area covered by the ordinance. Griswold argues that the present ordinance is a significant "step" toward allowing automobile sales on Waddell's property. Second, Griswold argues that a conflict exists because Waddell operates a snow removal business which uses sand stored on Rosi's property. However, the sand is owned by another man, Paul Hodgson, and Waddell has agreed to add salt to Hodgon's sand pile in exchange for use of the sand in his snow removal service. There is no direct business relationship between Waddell and Rosi.

We have found a substantial financial interest where members of a governing board had a "narrow and specific interest" in the immediate subject of a regulation. In *Carney v. State, Board of Fisheries*,[46] the fisheries board passed a regulation allocating water area and salmon resources between drift and set netters in a section of Bristol Bay. Four members of the board either held permits for drift netting or worked for drift net fishing operations in the covered area. We ruled that a conflict existed because the effect of the regulation was to benefit drift netters in the affected area, including the four board members.[47] We held that this differentiated their interests from the general interests of the industry as a whole and made them "narrowly and specifically interested."[48]

Similarly, in *Griswold I*, we found a conflict of interest with regard to council member Brian Sweiven, who owned one of the thirteen lots in the area affected by the ordinance.[49] Despite the city's claim that Sweiven's home and appliance repair business would not be affected by the ordinance allowing auto sales and services, we ruled that the ordinance was likely to increase the value of Sweiven's land because the potential uses of the land would be increased.[50]

Council member Waddell's situation is distinguishable from these cases. Viewing Griswold's allegations in the light most favorable to Griswold, they do not rise to the level of creating a violation. Under Griswold's own version of the facts, Waddell does not own any property in the area affected by Ordinance 98–9(A) nor does he participate in any business operations that are directly benefitted by the ordinance. Therefore, Waddell does not have a direct connection to the subject matter of Ordinance 98–9(A); at best, his connections are attenuated.

We hold that the benefit created by such an attenuated connection is too speculative to amount to a disqualifying conflict of interest. Griswold's allegations fail to indicate how the amended ordinance would provide any direct benefit to Waddell without requiring an intervening step or additional council action. This means that Waddell does not have a "narrow and specific" interest in the subject matter of this regulation in the same way as the fisheries board members in *Carney* or council member Sweiven in *Griswold I*.

42. AS 29.20.010.

43. HCC 01.12.010.

44. *See* HCC 01.12.040.

45. *See* HCC 01.12.050.

46. 785 P.2d 544 (Alaska 1990).

47. *See id.* at 548.

48. *See id.*

49. *Griswold I*, 925 P.2d 1015, 1025, 1027 (Alaska 1996).

50. *See id.* at 1026–27.

Because neither of the two arguments raised by Griswold creates a convincing case that Waddell has a substantial financial interest in the changes proposed in Ordinance 98–9(A), we hold that the superior court properly dismissed Griswold's claim on summary judgment.

## V.  *CONCLUSION*

Without reaching the question whether collateral estoppel was properly applied in this case, we hold that Griswold has failed to show that the circumstances in this case are materially different so as to avoid application of the controlling legal rule in *Griswold I.* We also hold that the superior court correctly found that the Homer City Council followed proper procedures in passing Ordinance 98–9(A).  Finally, the superior court properly found that council member Waddell would not have a disqualifying conflict of interest even if all of Griswold's allegations are assumed to be true.  As a result, we AFFIRM the decision of the superior court in full.

MATTHEWS, Justice, not participating.